Shortly before midnight on October 4, 1973, a neighbor of Shirley Ann Skipper telephoned and asked Ms. Skipper to walk with her from the apartment complex, where the two women lived, to a restaurant and lounge a distance of some 200 yards. The neighbor, Martha Haas, said that they would only be gone a little while; that she was going to the lounge to get Charlie Crovo and would then return to the Haas apartment. Ms. Skipper protested that she had to be up at 5:00 a.m., had already retired and did not want to go. She relented, however, and got dressed and the two women left the apartment at approximately 12:05 a.m. on October 5th. When they reached the lounge, Mr. Crovo was waiting for them and told Ms. Skipper to get Keene Hammond. After having Keene Hammond pointed out to her, since she had never met him, Ms. Skipper approached him on the dance floor and told him that Charlie was ready to go.
The four left the lounge by the back door. Ms. Skipper testified that she started walking toward her apartment, but Mr. Crovo told her to get in the car. She did so, believing that they were going to the apartment. After Ms. Skipper got into Mr. Crovo's car, he announced that he "was going to the Steak House to get something to eat." Ms. Skipper testified: ". . . I told him that I did not want to go, that I was not hungry and that I wanted to go home." Ms. Skipper told Mr. Crovo that she had to get up at 5:00 a.m. and wanted to go home, but he said no, ". . . we are going to get something to eat . ." She again told him that she did not want to go but wanted to go home. Instead of driving to the apartment, Mr. Crovo headed in the direction of the Sky Ranch Steak House and, within a very few minutes, at approximately 12:15 a.m., the automobile driven by him left the road and settled in a ditch. Ms. Skipper suffered severe injuries.
Mr. Keene Hammond testified that he and Mr. Crovo had begun drinking at one lounge around 6:30 p.m. and continued to drink at the lounge adjacent to the apartment complex in which Martha Haas lived until around midnight, when Charlie called Martha Haas to join them. He did not remember how many drinks they had. He did not remember whether Ms. Skipper and Ms. Haas had a drink, and he did not remember whether Ms. Skipper protested that she did not want to go to the Sky Ranch Steak House. He did remember the accident, and did remember that Mr. Crovo told him to tell the police that he, Hammond, was driving the automobile.
Within two or three days of this accident, Mr. Crovo conveyed the house in which they lived to his wife. Mrs. Crovo testified that the conveyance was made as a part of a divorce settlement between them, but that divorce proceedings were never instituted.
Ms. Skipper sued Mr. Crovo charging him with negligence and wanton misconduct. She also sought to set aside as fraudulent the conveyance of the property to Mrs. Crovo. Aetna Casualty intervened because it had paid Ms. Skipper $10,000 under the uninsured motorist provision of Ms. Skipper's liability policy. *Page 1085 
At the conclusion of the evidence, the trial court submitted the negligence and wanton claims to the jury. The fraudulent conveyance claim was withheld from the jury's consideration as was Aetna's claim. The jury returned a verdict in favor of Ms. Skipper in the amount of $22,500. The Crovos appealed.
The first argument made for reversal is that the trial court erred in refusing to direct a verdict in favor of Crovo on the negligence and wanton counts. Crovo contends that Ms. Skipper's negligence claim was barred by the guest statute; and that he was entitled to a directed verdict on the wanton count, since he says there was not a scintilla of evidence tending to show that his conduct was wanton.
The purpose of the guest statute has been stated many times and needs no repetition here. Suffice it to say that, where the facts are disputed or are conflicting whether one is a guest within the meaning of the guest statute is a question for the jury. Harrison v. McCleary, 281 Ala. 87, 199 So.2d 165 (1967).
It has frequently been stated that the relationship between the host and guest is consensual in nature and involves some acceptance by the guest of the relationship and its attendant hazards; and that misrepresentations, express or by implication, which operate to induce one to become a rider in the automobile, can nullify the relationship. See 8 Am.Jur.2d, Automobiles and Highway Traffic, § 475.
In this case, there was evidence from which the jury could have concluded that Ms. Skipper got into Crovo's automobile only because she had been told by Mrs. Haas that, if she would accompany her to the lounge to get Charlie, they would bring her back to her apartment immediately. The jury could have believed Ms. Skipper's version of the circumstances under which she entered Crovo's automobile, i.e., that she thought they were going back to the apartment. Her evidence was to that effect and she protested when Crovo insisted that they were going to another restaurant. We find no error in submitting the negligence count to the jury. Ms. Skipper put on evidence which, if believed by the jury, would take her out of the operation of the guest statute insofar as the negligence claim is concerned.
In addition, there was sufficient evidence of wantonness to submit this claim to the jury. Crovo argues, on appeal, that there was not a scintilla of evidence going to prove wantonness. It is his contention that, at the time of the accident, he had been drinking, was driving slowly, down a two-lane road. Therefore, he says it is impossible to determine that he was guilty of doing an act "with reckless indifference." We disagree. The evidence was uncontroverted that Mr. Crovo had been drinking for some six hours when the trip to the restaurant was undertaken. Mr. Hammond testified that, when it became apparent that the car was leaving the road, he called to Mr. Crovo but the latter did not respond and he could not discern any braking of the automobile. The car simply left the road and ran into a deep ravine. We believe this is evidence from which the jury could have found that Mr. Crovo undertook to drive the automobile to the restaurant in reckless disregard of the welfare of himself and those persons riding with him. See 141 A.L.R. 58, Anno. — Automobile Guest Statutes — Intoxication.
The Crovos complain that the trial court erred in its treatment of the fraudulent conveyance count. In response to this argument, we first note that Rule 18 (b), ARCP, expressly provides:
 "Joinder of Remedies: Fraudulent Conveyances. Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action; but the court shall grant relief in that action only in accordance with the relative substantive rights of the parties. In particular, a plaintiff may state a claim for money and a claim to have set aside a conveyance fraudulent as to him, without first having obtained a judgment establishing the claim for money." *Page 1086 
The Committee Comments to this rule state:
 "Rule 18 (b) is inserted to make it clear that in a single action a party should be accorded all the relief to which he is entitled regardless of whether it is legal or equitable or both. In respect to fraudulent conveyances the rule conforms to the provisions of the Uniform Fraudulent Conveyance Act, §§ 9 and 10. . . ."
Clearly, there was no error in the trial court's denying Crovo's motion to strike the fraudulent conveyance claim. Just as clearly, Rule 42 (b), ARCP, permits, but does not compel, the trial court to sever this claim for a separate trial. Of course, as the rule states, the right of a trial by jury is unaffected by the rule. One cannot, by joining claims under Rule 18, secure a jury trial where a jury would not be required were the claim brought separately. We do not think that the treatment accorded the fraudulent conveyance claim by the trial court in this case circumvented any of the above rules. Although the court refused to strike the claim, it did remove that aspect of the case from the jury's consideration, telling the jury that that part of the case was totally outside the jury's consideration and that the court would decide that part of the case.
We now turn to whether there was evidence which would support the trial court's conclusion that the conveyance of the Crovo property was fraudulent as to Mr. Crovo's creditors. Under our statute, which is no more than a restatement of the common law (Title 20, § 7) as to an existing creditor, a deed without valuable consideration conveying any of the debtor's property subject to the debt is void, regardless of the intent or financial condition of the parties, and
 ". . . If instead of being voluntary, it was given to satisfy, or as a credit on a debt owing the grantee by the grantor, a proportionate amount of the value of the property conveyed is free from the right of a creditor though then existing to subject it to the debt, and the intent in making the deed is not controlling.
 "If the debtor conveys the property and receives value for it, to the extent of that value, the creditor of the grantor is without remedy unless the debtor made the conveyance with the fraudulent intent to hinder, delay or defraud his creditor, and the grantee had notice of that fraudulent intent, and, therefore, participated in the fraud. . . ." Headley v. Headley, 264 Ala. 383, 387, 88 So.2d 341, 345
(1956).
The deed to the property from Mr. Crovo to his wife, made just two days after the accident wherein Ms. Skipper was injured, recited a consideration of "one dollar and love and affection." Mrs. Crovo testified that the deed was delivered as a part of a settlement pursuant to a divorce between the Crovos. However, no divorce proceeding was ever filed, and the parties continued to live together as man and wife. The trial judge could have believed that no valuable consideration passed, or he could have believed that even had valuable consideration passed, that Mr. Crovo conveyed the property to his wife with the intent to hinder, delay and defraud his creditors, and that Mrs. Crovo had knowledge of that intent. There were inferences in the evidence to support either conclusion. Therefore, we cannot disturb the trial court's finding, based as it was on evidence adduced at the trial.
Lastly, Mr. Crovo argues that the trial court erred in not declaring a mistrial in this case. It is his contention that permitting the jury to hear evidence regarding conveyances of property by Mr. Crovo to his wife so prejudiced the jury as to render it unable to fairly try the case. We are not persuaded that this is so. The trial court carefully defined for the jury the issues to be determined by it and those issues which were outside the jury's consideration. The jury was instructed to totally disregard the issue of fraudulent conveyance, and to disregard and not to give any consideration to the rights of Aetna, as the insurer under *Page 1087 
the plaintiff's uninsured motorist coverage, the court telling the jury that those were matters for the court's consideration and not for the jury. We, therefore, do not believe that Mr. Crovo was entitled to a mistrial.
We find no error to reverse.
AFFIRMED.
MADDOX, FAULKNER, EMBRY and BEATTY, JJ., concur.