This appeal involves an action for personal injury that was tried before a jury in the Circuit Court for Jefferson County. Kenneth Gregory Roe (plaintiff), a minor brought suit through his father and next friend against Ed Lewis (defendant) for injuries sustained while he was riding in an automobile operated by defendant. Plaintiff alleged that defendant negligently or wantonly caused the vehicle to collide with a tree. The trial court found that plaintiff was a guest under the Alabama Guest Statute, Code 1975, § 32-1-2, and granted defendant's motion for a directed verdict as to the issue of negligence. The issue of wantonness was submitted to the jury. A defendant's verdict was returned. On this appeal, plaintiff seeks our review of the trial court's actions granting the directed verdict on the issue of negligence, and refusing his requested jury charge defining wanton misconduct.
Two issues are presented for our resolution by this appeal. The first is: Was plaintiff a guest under Code 1975, § 32-1-2, thereby allowing the trial judge to grant defendant's motion for a directed verdict on the issue of negligence? The second is: Did the trial court properly refuse plaintiff's requested jury charge defining wanton misconduct? Our review of these issues leads us to conclude that the trial court is due to be reversed on the first issue and affirmed on the second.
The alleged facts pertinent to this appeal are as follows. On September 30, 1977, plaintiff and two others, Claire Holt and Tommy Floyd, were occupants of an automobile driven by defendant. All were high school students and friends. Defendant picked up the others about 6:30 p.m. They drove around for a while and then went to a party. Defendant drove throughout the entire evening. During the course of the evening he consumed four or five beers. Defendant acknowledged that he was "high" but not drunk. The other occupants of the automobile had been drinking mushroom tea. Tommy Floyd and Claire Holt had prepared it earlier that day at plaintiff's home. Testimony related that when drunk it induced a hallucinogenic effect. Defendant did not drink any of the mushroom tea.
After the party, the group continued driving around. Defendant drove to an intersection and there drove onto the front lawn of a house. Defendant gave this explanation of his actions that followed:
 Q. Okay. Why did you pull up into this yard we were talking about a few minutes ago? Now what I mean by pull up into the yard, can you pull up off the road into the yard itself?
A. Yeah.
Q. All right. And why?
A. Just raising hell.
Q. Well, what were you going to do in the yard?
A. I was going to trench it.
Q. Okay. Could you explain what trenching is?
 A. Yeah, it is — you know, when you are in the yard, you punch it, and the tires spin and makes a trench.
Q. Okay. Did you do that to that yard?
A. No, I didn't get a chance to.
Q. Why?
 A. Because the owner of the house pulled up in front of me.
Q. Was he in an automobile?
A. Yeah.
Q. And, then, tell me what happened.
 A. Then I swerved to the left, and I pulled out on the street, and then the chase was on. *Page 752 
Q. When you say the chase was on —
A. He started chasing me.
Q. Okay. Where did you go?
 A. I went down this real windey road in Hoover, the same road that he lived on, and it keeps going straight, you know, and then it gets into like — gets real curvy. And I was in a real big car, so I guess I was going too fast for those curvy roads.
Q. How fast were you going, if you can recall?
A. I guess about 65, 60.
 Q. Okay. Had you been on that road before that night?
A. No.
Q. But it is a very curvy road, as you describe it?
A. Yeah.
Plaintiff testified that prior to the accident, defendant's driving scared him. He stated that he asked defendant to slow down, or to stop the car. According to plaintiff, the defendant did not respond to his requests. There was testimony from Claire Holt and Tommy Floyd that they also asked defendant to slow down or to stop and let them out.
The chase ended when the automobile defendant was driving skidded on some pine straw, left the road, and struck a tree. Claire Holt testified that defendant went into a curve at 40 to 50 miles per hour where the accident occurred.
In his brief, plaintiff concedes that he was a "guest" when first picked up by defendant. As a guest, plaintiff normally could not hold defendant liable for injuries or death unless they were the result of willful or wanton misconduct. Our guest statute, Code 1975, § 32-1-2, provides:
 The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle.
Previously, this court has commented on the purpose of our guest statute in Blair v. Greene, 247 Ala. 104 at 109,22 So.2d 834 at 837 (1945):
 The situation that this statute was apparently designed to prevent is well known. As the use of automobiles became almost universal, many cases arose where generous drivers, having offered rides to guests, later found themselves defendants in cases that often turned upon close questions of negligence. Undoubtedly the legislature in adopting this act reflected a certain natural feeling as to the injustice of such a situation. The terms of the statute should be construed with their intent and purpose in view, and the purpose and object that the legislature had in mind sometimes throws light upon the meaning of the language used.
This court has stated also, that "the guest statute is in derogation of the common law and as such [it] should be strictly construed." Walker v. Garris, 368 So.2d 277 at 279 (Ala. 1979) (citing Green v. Jones, 136 Colo. 512,319 P.2d 1083 [1958]). Because the term "guest" is not defined in the statute, definition of that term falls upon the court. Harrisonv. McCleary, 281 Ala. 87, 199 So.2d 165 (1967); Sullivan v.Davis, 263 Ala. 685, 83 So.2d 434 (1955). It is a question of fact whether one is a guest within the statute. Boggs v.Turner, 277 Ala. 157, 168 So.2d 1 (1964). A multitude of factual situations exists to which the statute must be applied:
 The commercial and social relationships that can exist between the driver of an automobile and his passenger are almost as numerous and varied as human activity itself. At one extreme we have the "hitch-hiker" guest who clearly falls within the purview of the statute. At the other extreme we have the passenger who pays the driver to be transported to a particular place and who is unquestionably beyond the scope of the statute. Between *Page 753 
these two extremes the dividing line may at times become illusory and shadowy. It is sometimes necessary to enter into a detailed examination of the present and former relations between driver and passenger; implied and expressed arrangements made between them as to the conduct of the particular trip; the purpose of the mission; the benefits accruing to the driver and passenger from the expedition; and any other factors that bring into proper focus the true status of the parties at the time of the accident which give rise to the legal action.
Sullivan v. Davis, 263 Ala. at 687-8, 83 So.2d at 436.
Plaintiff contends that his protests against defendant's driving during the high speed chase changed his status so as to take him outside the operation of the statute. We agree. InCrovo v. Aetna Casualty and Surety Company, 336 So.2d 1083 at 1085 (Ala. 1976) (Crovo), this court observed:
 [T]he relationship between the host and guest is consensual in nature and involves some acceptance by the guest of the relationship and its attendant hazards; and . . . misrepresentations, express or by implication, which operate to induce one to become a rider in the automobile, can nullify the relationship. [Citation omitted.]
There, this court held that a driver's misrepresentations may operate to negate the effect of the statute. Citing Crovo, this court has stated that "misrepresentations on the part of the driver may nullify the relationship, just as a `guest's' protests may convert him into a passenger." Walker v. Garris, at 279. We are of the opinion that Walker v. Garris states the correct rule of law applicable to this appeal.
Defendant argues that the language employed in Walker v.Garris, "a `guest's' protests may convert him into a passenger," is merely dictum without a theoretical foundation in precedent from Crovo. We agree that the statement may be dictum, but we disagree that it is without foundation in precedent. As noted above, this court has given strict construction to the statute and has noted the consensual nature of the guest-host relationship. It is consistent, then, that protests by a guest may vitiate that consent and change his status to that of a passenger.
Defendant argues that to allow the status of an occupant of a vehicle to change from guest to passenger during the trip would, in effect, void the statute. We disagree. The purpose of the statute is to prevent generous drivers, who offer rides to guests, from being sued in what often are close cases of negligence. Blair v. Greene, supra. That purpose is not served by application of the statute in the instant case. To apply the statute here would serve only to insulate the defendant from liability by making plaintiff a captive to defendant's negligent acts despite protests to the contrary. That result cannot be sanctioned.
Defendant calls our attention to the fact that courts of other jurisdictions have held that protests by a guest to a driver's reckless operation do not change the guest-host relationship. We are aware that other courts have held contrary to our decision on this point. Hayes v. Brower, 39 Wn.2d 372,235 P.2d 482 (1951); Vance v. Grohe, 223 Iowa 1109,274 N.W. 902 (1937). Other authorities notwithstanding, we are of the opinion that our decision is consistent with this court's previous decisions and the better rule of law.
Next, defendant contends that the nature of plaintiff's protests was unclear. Assuming that is the case, it does not change our decision. The trial court granted defendant's request for a directed verdict. The following standard of review governs a request for a directed verdict.
 Where a directed verdict is requested, the entire evidence must be viewed in a light favorable to the opponent. When a reasonable inference may be drawn, which is adverse to the party requesting the directed verdict, the directed verdict is properly refused.
Alabama Power Company v. Robinson, 404 So.2d 22 at 24 (Ala. 1981); Alford v. City of *Page 754 Gadsden, 349 So.2d 1132 at 1135 (Ala. 1979); Alabama PowerCompany v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975).
The granting of a directed verdict is proper only where:
 [T]he facts are such that all reasonable men must draw the same conclusion from them. . . . Unless the evidence is free from doubt or adverse inference, the question is for the jury. Alabama Power Co. v. Guy, 281 Ala. 583, 206 So.2d 594.
. . . .
 In civil cases, a question must go to the jury, if the evidence, or any reasonable inference arising therefrom, furnishes a mere gleam, glimmer, spark, the least particle, the smallest trace, or a scintilla in support of the theory of the complaint. . . .
Alabama Power Company v. Robinson, at 25; Turner v. People'sBank of Pell City, 378 So.2d 706 at 709 (Ala. 1979); Draughonv. General Finance Credit Corp., 362 So.2d 880 (Ala. 1978).
Viewing the evidence in a light most favorable to plaintiff, there was testimony to support his contention that he asked defendant to slow down or stop, but that defendant ignored his request. That provides at least a scintilla of evidence that plaintiff's protests terminated the guest-host relationship before the accident occurred. That being the case, the trial court erred by not submitting plaintiff's negligence claim to the jury. Our decision, therefore, requires that we reverse and remand for a new trial.
Finally, we address plaintiff's contention that the trial court erred by refusing his requested jury charge on the issue of wantonness. The trial court used Alabama Pattern JuryInstructions: Civil § 29.00 (1974) to formulate its definition of wantonness. The court gave the following instruction:
 Wantonness [sic] misconduct is the conscious doing of some act or omission of some duty, under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty, an injury will likely or probably result. Before a party can be said to be guilty of wantonness [sic] misconduct, it must be shown that with reckless indifference to the consequences he either consciously and intentionally
did some wrongful act or consciously omitted some known duty which produced the injury of [sic] the plaintiff. Wanton misconduct is [sic] charged against this defendant is the legal and moral equivalent of an intentional wrong doing. [Emphasis added.]
The trial court's charge substantially incorporates the text of the above-cited pattern jury charge. Plaintiff contends that the part of the trial court's charge where it states "he either consciously and intentionally did some wrongful act or consciously omitted some known duty which produced injury of [sic] the plaintiff," is in error. Plaintiff insists that the charge should read "he either consciously or intentionally did some wrongful act. . . ." The parties agree that wanton misconduct does not require an intention to injure. That rule of law is well established. Gunnells v. Dethrage,366 So.2d 1104 (Ala. 1979); Horn v. Davis, 285 Ala. 5, 228 So.2d 767
(1969); McNickle v. Stripling, 259 Ala. 576, 67 So.2d 832
(1953); Atlantic Coast Line R. Co. v. Brackin, 248 Ala. 459,28 So.2d 193 (1946); Weatherly v. Nashville, Chattanooga St.Louis Railway, 166 Ala. 575, 51 So. 959 (1909). Instead, plaintiff argues that the trial court's use of the conjunctive "and" in the phrase "consciously and intentionally," is misleading. He suggests that use of the conjunctive "and" operates so as to confuse wantonness with wilfulness. The latter term denotes an intention to cause an injury. English v.Jacobs, 263 Ala. 376, 82 So.2d 542 (1955); Sutherland v. Roth,407 So.2d 139 (Ala.Civ.App. 1981). Alabama Pattern JuryInstructions: Civil § 29.03 (1974). Plaintiff theorizes that the problem can be solved by use of the disjunctive "or," instead of the conjunctive "and," as well as by giving a charge stating that wantonness does not require an intention to injure. Plaintiff cites Maffett v. Roberts, 388 So.2d 972 at 976 (Ala. 1980), where the trial court charged the jury on wantonness by using a charge based on the instruction found in the *Page 755 
above-mentioned § 29.00, but in which "or" was substituted for "and." In Maffett v. Roberts, the trial court, after its charge on wantonness, gave the following instruction: "Now, an intent to injure is not necessary to constitute wantonness. . . ." Plaintiff argues that such a charge should follow the § 29.00 charge.
We disagree with plaintiff's contentions. As the given jury charge reads, it states, in the positive, what wanton misconduct is. In pertinent part, the charge speaks to the nature of the act which is the wanton misconduct. The charge simply states that wanton misconduct is an act done consciously and intentionally. (It states also that consciously omitting a known duty may constitute wanton misconduct.) The charge does not state that the act must be done with a conscious intention to cause the injury. It merely states that to come within the definition of wanton misconduct the act must be done "consciously and intentionally." Even if the charge employed the disjunctive "or" instead of the conjunctive "and," we fail to see how that would yield the result that plaintiff desires. The adverbs "consciously" and "intentionally" would still modify the doing of an act. They would not modify the doing of an act that is stated to be an act that is done for the purpose of causing injury. Accordingly, we find no error in the trial court's charge as given.
Lastly, we agree with plaintiff that the trial court's additional charge in Maffett v. Roberts, stating that an intention to injure is not required for a showing of wantonness, may be helpful. The given charge states in the positive what wanton misconduct is. The additional charge quoted from Maffett v. Roberts is a negative definition, stating, in part, what wanton misconduct is not. Undoubtedly, a statement as to what something is not is always helpful in understanding the matter being defined. We note that a negative definition of wanton conduct is contained in Alabama PatternJury Instructions: Civil § 29.01 (1974). Nevertheless, we need not concern ourselves further with this point. Plaintiff requested no such additional charge and, therefore, his argument is not properly before this court.
The judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
TORBERT, C.J., and FAULKNER, JONES, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
MADDOX, J., not sitting.