BEATTY, Justice.
Appeal by the plaintiff from a judgment for the defendants based upon a jury verdict. We affirm.
The issue before us is whether or not the trial court committed reversible error by allowing the admission of certain evidence upon cross-examination of the defendant Walden.
Walden was an employee of Zippy Mart at a store located on Lower Wetumpka Road in Montgomery. Ms. Bragg was a former employee of Zippy Mart. Apparently prior to the incident in question the store encountered a personnel problem concerning Bragg, involving the frequency with which her boyfriend, Ernest Bethea, was in the store, and involving his conduct as well. Several disturbances had been experienced at the store involving members of the Be-thea family. Ms. Bragg ultimately resigned as an employee. Sometime later, on December 4, 1980, as she was leaving the store after shopping with two friends, Ms. Bragg was informed by one of the Zippy Mart employees, Mrs. Rambo, that she was “trespassed [barred] from the premises.” A few days later, on December 10, she attempted to purchase some cigarettes from the store but, according to Ms. Bragg, she was told by Janice Walden, another store employee, that she, Janice, could not sell her anything. The evidence was conflicting on that point. Ms. Walden testified that she asked Ms. Bragg two or three times to leave the store.
Later that day Ms. Bragg and one of her companions were arrested. The plaintiff was charged with criminal trespass; two others were charged with other offenses. *868 Trials occurred in municipal court. Ms. Bragg was found not guilty, and subsequently brought this action in two counts alleging malicious prosecution.
Plaintiff contends on appeal that testimony pertaining to other trials involving these same defendants but different plaintiffs was improperly admitted, and that the trial court’s subsequent admonition to the jury was insufficient to remove its adverse influence.
The issue arose from the testimony of the co-defendant, Janice Walden. During her direct examination by plaintiff’s counsel, it was brought out that she had signed three of the warrants for the arrest of the plaintiff and the Betheas, and considerable testimony was elicited from her concerning the incidents leading up to the charges and trials emanating from those warrants, especially the warrant issued against Joe Be-thea:
“Q. Other than the Betheas, have you sworn out a warrant on anybody?
“A. I’ve never had any problem with anyone else.
“Q. Did Joe do anything else? I believe you stated once before in a prior hearing that Betty Bethea was being- — you were at the trial when Betty McClellan was charged with trespass; were you not?
“A. Which trial? The first one, second one?
“Q. You know, the criminal trial.
“A. Or the civil one?
“Q. The criminal trial.
“A. Yeah, I was there.
“Q. You were there? Do you know whether or not she was found guilty or not guilty by the jury?
“A. She was found guilty in City court and not guilty in the next court, and then in the civil action—
“Q. Forget the civil. I’m not talking about the civil. I didn’t ask you about the civil.”
When Ms. Walden was taken on cross-examination, the following exchange occurred:
“Q. There has been a lot said about some matters that happened earlier. Mr. Bell has asked you a lot of questions about Joe Bethea and, just to clarify that, he’s introduced into evidence a warrant. Could you tell us about just what happened with this knife?
“A. I had asked him on several different dates to please get the knife out of the store and not to bring it back in there. The day before I had warned him about the knife. Then the day this happened, he walked up to the counter, I was checking him out. He had a Coke, and I don’t remember the items. I looked up and he was standing there with a knife and there was a teenager standing behind him. He turned and looked at the guy behind him, and he made the remark.
“Q. What’s on there is what happened, and then he asked you about being brought to City Court.
“A. Right.
“Q. He was found guilty of the menacing?
“A. Right.
“Q. And then you said you didn’t know what happened? It had got dismissed? All right, he asked you if Joe has ever threatened you, other than pulling this knife. Has he ever done anything to you since then that would be classified as a threat or taken any actions, against you personally?
“A. Just the civil.
“Q. A civil? What was that?
“MR. BELL: Your Honor, I object to anything on the civil nature. It’s not relevant to this case.
“MR. ANDERSON: Your Honor, we feel like—
“MR. BELL: It has no probative value to this case.
“MR. ANDERSON: We feel like we’re entitled to bring this in.
“THE COURT: You opened the door, counselor. Objection overruled.
“MR. BELL: Not to the civil, Your Hon- or, just the criminal.
“THE COURT: Well, the objection is overruled.
*869 “Q. (Mr. Anderson continues) Would you tell the jury about the civil case?
“A. We were here in the civil matter with Joe Bethea and they did find, the judge found that I had probable cause to sign a warrant.
“Q. Okay. That was a malicious prosecution case by Joe Bethea?
“A. Yes.
“Q. All right. And then what about Betty Bethea? You signed a warrant for her arrest for trespassing that has been introduced into evidence and, I believe you said Wanda had?
“A. Right.
“Q. Would you tell the jury what you know about what happened after that warrant was signed?
“A. She also filed—
“MR. BELL: Same objection.
“THE COURT: Same ruling.
“A. A civil. She also filed a claim into civil court and the judge ruled that I did have probable cause to sign the warrant.
“Q. Okay, she sued you for malicious prosecution too?
“A. Yes.
“Q. All right, so this case that is before us today is the third malicious prosecution case brought by these folks of the three warrants you have signed?
“A. Uh-huh.
“Q. And the other two had been found in your favor?
“A. Right.”
After this exchange, plaintiff’s counsel moved for a mistrial, which was denied; however, the trial court admonished the jury:
“THE COURT: All right. Ladies and Gentlemen, there has been some reference made to previous civil cases. You’re not to make any reference in this case from anything which may have occurred in any other case. This case stands on its own two feet. As to the outcome of any civil case which has been testified to, you’re not to allow that to have any bearing on what you do in this case.... ”
The trial court was correct in the first instance, that counsel had-“opened up” the subject of Joe Bethea’s conduct with respect to the charge filed against him and it was therefore proper to allow cross-examining counsel to explore his conduct toward the witness, even if that conduct involved the bringing of a civil action against her. The references to the verdicts in all of the civil cases, however, were not relevant to the question of Joe’s conduct, nor were the references to Betty Bethea’s case and the jury verdict against her so related. Apparently, the trial judge recognized the prejudicial nature of these irrelevant references and responded by cautioning the jury about their effect. We cannot hold as a matter of law that the trial judge’s action did not effectively remove any prejudicial effect of those irrelevant matters. Objecting counsel himself brought out details involving the criminal cases. His objection is directed to references to the civil cases. The trial judge was present, saw and heard all of the evidence relating to all of the cases, and assessed the jury’s reaction to his own instructions. Much discretion is reposed in him on such matters. Kilcrease v. Harris, 288 Ala. 245, 259 So.2d 797 (1972).
Nor did the trial judge commit error by overruling plaintiff’s motion for a mistrial. In addition to what we have stated, the record reveals that the trial judge defined the issues to the jury very carefully in his oral charge, and these instructions, together with his earlier admonition concerning the references to civil cases, were sufficient to enable the jury to fairly try the case. Cf. Crovo v. Aetna Casualty & Surety Co., Ala., 336 So.2d 1083 (1976).
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.