This is an appeal from a judgment for the defendants in a wrongful death action filed by Jimmy McDougle, as administrator of the estate of Randall ("Randy") Dean McDougle, deceased, against Billy Steven Tittle, Terri Shaddrix, Larry Ricks, Stonewall Insurance Company, and Dixie Insurance Company. The trial court, at the conclusion of McDougle's case, directed a verdict for Shaddrix on McDougle's claims for negligence and wantonness, and the jury returned a verdict for the remaining defendants (except Stonewall Insurance Company, as to which the claims were to be tried separately). The trial court entered judgment on the verdict. McDougle raises issues concerning the trial court's directed verdict on his negligence and wantonness claims against Shaddrix and concerning the trial court's exclusion of certain evidence.
Early in the evening of March 16, 1985, several young people gathered at the home of Jeff and Cynthia Richie. The group left the Richies' home in three vehicles and went on a ride in the nearby Bankhead Forest, with no particular purpose for the trip, other than possibly to stop at a party. Brent Sims drove one of the vehicles, and he had two passengers with him. Terri Shaddrix drove a car; Randy McDougle, Anthony Watson, and Cynthia Richie rode with Shaddrix. Scotty Jenkins drove the third vehicle. His passengers were Michelle Watson and Jeff Richie.
The group left the Richies' home, traveling first on the Old Moulton Road and then south on Danville Road. They all stopped once at a convenience store to get soft drinks and snacks; it is undisputed that neither alcohol nor drugs were involved in the accident that later occurred. After stopping at the convenience store, the group of vehicles proceeded, with Sims going first, followed by Shaddrix, and then Jenkins. Sims eventually got so far ahead he was out of sight of the occupants in the vehicles driven by Shaddrix and Jenkins.
The accident which is the basis of this action occurred at the intersection of Highway *Page 230 
36 and Danville Road. Obeying the stop sign at the intersection, Shaddrix came to a complete stop. She then waited for the first of two transfer trucks to come through the intersection from her right to her left, west to east. Jenkins's vehicle was directly behind Shaddrix. While Shaddrix was stopped, Randy McDougle opened the car door, leaned out of the car, and waved back at his friends in Jenkins's car. He voluntarily closed the door again. Shaddrix then slowly and deliberately pulled into the intersection. The accident occurred immediately; the transfer truck driven by defendant Billy Tittle hit Shaddrix's vehicle and killed Randy McDougle.
On May 10, 1985, Jimmy McDougle, as administrator of Randy McDougle's estate, filed a complaint in the Circuit Court of Morgan County. The complaint as amended stated claims against Billy Steven Tittle for wrongful death and against Larry Ricks for negligent entrustment of the vehicle to Shaddrix. It further alleged that Shaddrix negligently or wantonly caused the death of Randy McDougle. The complaint also included as defendants, pursuant to Ala. Code 1975, §32-7-23, Stonewall Insurance Company and Dixie Insurance Company for underinsuring Shaddrix, Ricks, and Tittle. Ricks was later dismissed as a defendant, and at the pre-trial hearing the parties stipulated that any claims against Stonewall Insurance Company would be tried separately.
The case was tried before a jury. During the direct examination of Anthony Watson, the trial court refused to allow testimony from Watson about the way Shaddrix had operated her vehicle earlier in the evening, before the accident at the intersection. At the conclusion of the plaintiff's case, the trial court granted Shaddrix's motion for directed verdict on McDougle's negligence and wantonness claims. The jury returned a verdict for the remaining defendants.
McDougle's first argument is that the trial court erred in directing a verdict for Shaddrix on McDougle's negligence claim. A directed verdict is proper where the law would not authorize a jury to render a verdict on the evidence or where a verdict against the moving party would be contrary to principles of law as applied to the facts at trial. Uptonv. Mississippi Valley Title Ins. Co., 469 So.2d 548
(Ala. 1985). Ala. Code 1975, § 32-1-2, known as Alabama's "guest statute," provides:
 "The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle."
Whether one is a guest is ordinarily a question of fact to be submitted to the jury, Roe v. Lewis,416 So.2d 750 (Ala. 1982), if the facts are disputed or conflicting about whether one is a guest within the meaning of the statute. Crovo v. Aetna Casualty Surety Co.,336 So.2d 1083, 1085 (Ala. 1976). Only when reasonable minds can reach but one conclusion from the uncontroverted facts does the question whether one is a guest within the meaning of Alabama's guest statute become one of law for the court.Harrison v. McCleary, 281 Ala. 87, 199 So.2d 165
(1967).
Shaddrix contends that the uncontroverted evidence at trial indicated that Randy McDougle was a guest within the scope of the guest statute and, therefore, that the trial court properly directed a verdict in her favor on McDougle's negligence claim. The trial record shows that McDougle presented no evidence that the trip was anything other than purely social and for no business purposes, and presented no evidence that McDougle paid Shaddrix for the ride. McDougle alleges that, even if all the evidence at trial indicated that Randy was a guest within the meaning of the statute, he "protested" enough to change his status from that of a "guest," whose negligence claim would be barred by the statute. This Court stated in Roe v. Lewis, supra, that under the proper circumstances *Page 231 
a person who has been a guest within the meaning of the guest statute may lose that status if that person protests to the driver that the driver is driving dangerously and demands that the driver stop the vehicle and let him out.
The Court described the facts in Roe v. Lewis as follows:
 "Plaintiff testified that prior to the accident, defendant's driving scared him. He stated that he asked the defendant to slow down, or to stop the car. According to plaintiff, the defendant did not respond to his requests. There was testimony from Claire Holt and Tommy Floyd that they also asked the defendant to slow down or to stop and let them out."
Id., at 752 (emphasis supplied).
The Court then gave the reasons leading to its decision:
 "To apply the statute here would only serve to insulate the defendant from liability by making the plaintiff a captive to defendant's negligent acts despite protests to the contrary. That result cannot be sanctioned."
Id., at 753 (emphasis supplied).
The Court thus indicated the rationale supporting the decision in Roe v. Lewis: one should not be expected to remove himself from a moving car, and thus one may not be considered a "guest" when he is held "captive" in a moving vehicle. McDougle argues that Randy McDougle was not within the purview of the guest statute, because Randy allegedly made some complaints about Shaddrix's driving. The mere complaints by McDougle did not constitute sufficient "protest" to enable McDougle to circumvent Alabama's guest statute; rather, to avoid the guest statute by using protest, as was done in Roe v. Lewis, Randy McDougle would have had to become actually a captive, an involuntary occupant held against his will and by duress.
There was no evidence presented to the trial court to indicate that Randy McDougle had become captive in Shaddrix's car or had even seriously complained about her driving. Instead, the uncontroverted evidence shows that after the alleged protests by Randy, Shaddrix came to a complete stop at the intersection. After Shaddrix stopped, Randy opened his door, leaned out, and waved to his friends behind him in Scotty Jenkins's vehicle. Randy then closed his door and remained in Shaddrix's car. This undisputed testimony concerning Randy's actions contradicts, rather than supports, the claim made by McDougle that Randy's "protest" changed his status from that of guest to that of captive. Once the evidence showed as a matter of law that Randy was a guest in Shaddrix's car, the guest statute mandated that the trial court direct a verdict for Shaddrix on the negligence claim.
A related argument presented by McDougle is whether the trial court erred by excluding testimony from Anthony Nelson on the issue of protest. The trial court excluded testimony concerning Randy's protest only after it was established that the "protests" the testimony concerned were all made before Randy had an opportunity to remove himself from Shaddrix's car but did not do so. McDougle conceded he had no evidence to the contrary on this point. The trial court stated that testimony about such protests was irrelevant because Randy had the opportunity to remove himself from Shaddrix's car and chose not to do so. Considering our discussion of Roe v.Lewis, supra, we find no reversible error in the trial court's ruling to exclude the testimony.
The final issue is whether the trial court erred in directing Shaddrix's verdict on McDougle's wantonness claims. Wantonness should be submitted to the jury unless there is a total lack of evidence from which the jury could reasonably infer wantonness. Burns v. Moore, 494 So.2d 4 (Ala. 1986). "Wantonness" is defined by the Court as the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. Burns v. Moore, supra at 5;Roberts v. Brown, 384 So.2d 1047, 1048 (Ala. 1980). *Page 232 
See also Lynn Strickland Sales Service, Inc. v.Aero-Lane Fabricators, 510 So.2d 142 (Ala. 1987).
There was evidence from which the jury could have concluded that Shaddrix's conduct was wanton. The testimony, viewed in the best light for McDougle, indicated that the truck was in Shaddrix's unobstructed view for approximately one-quarter of a mile, yet she drove in front of the truck without regard for the present danger. Furthermore, the testimony indicated that Shaddrix drove in front of the truck when the truck was no more than fifty feet away from her. Finally, McDougle argues that the testimony presented could have allowed the jury to conclude that Shaddrix wantonly proceeded into the intersection, either because she looked towards the truck but then pulled out regardless of its proximity or because she never looked towards the truck.
Shaddrix contends that there was no evidence presented that she failed to look towards the truck. Assuming this view of the evidence to be correct, then McDougle's argument that Shaddrix was wanton because she looked but then pulled out regardless of the oncoming truck, is actually strengthened. Considering all the evidence, we hold that the trial court erred when it directed a verdict against McDougle's wantonness claim.
The judgment of the trial court on the directed verdict on McDougle's negligence claim is due to be affirmed; however, the judgment based on the directed verdict on McDougle's claim of wantonness is due to be reversed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and JONES, SHORES, ADAMS and STEAGALL, JJ., concur.
HOUSTON, J., concurs in the result.