BROWN, Justice.
Coach Keith Nall and Coach Donnie Faulk, defendants in an action pending in the Escambia Circuit Court, petition this Court for a writ of mandamus ordering the trial court to enter a summary judgment in their favor against the plaintiffs, Michael F. Cannon, Jr. (“Michael”), and his father and mother, Michael F. Cannon and Lee D. Cannon. We grant the petition and issue the writ.
Michael played baseball on the Escam-bia County High School junior-varsity baseball team. On March 15, 1999, the junior-varsity team and the varsity team were conducting a base-running drill during a joint practice session. As part of the drill, a runner would stand at third base while Coach Faulk, the junior-varsity coach, hit a baseball from home plate. The purpose of the drill was to teach the players how to lead off the base, how to “read” the ball off the bat of the hitter, and how to react when the ball was hit. The varsity coach, Coach Nall, stood at *543 third base instructing the runner. The remaining players on the team, including Michael, stood in the foul area behind the third-base line watching the drill and awaiting their turn as runners. Coach Nall and Coach Faulk had instructed the players to pay attention to the drill and to stand near the fence, away from the field. While the base runner wore a batting helmet, as do all base runners during a game, the players awaiting their turn near the fence were not wearing helmets.
In order to replicate what would actually occur during a game, a player would pitch a baseball to Coach Faulk from the pitcher’s mound. Coach Nall testified that he instructed Coach Faulk to take “full cuts,” or full swings, at the ball so the balls could reach the outfield, as they would in a real game. Coach Faulk testified that he took full swings at the pitched balls; he testified that some of the resulting hits were “high flies,” some were “line drives,” some just put the ball “in play,” and some were hard enough to make the ball roll to the outfield fence.
The injury to Michael occurred when Coach Faulk hit one of the balls pitched to him, and it went foul and hit Michael, who was standing in the area near third base, in the head above his left ear. Coach Nall and Coach Faulk took Michael into the dugout and examined him. A parent who was watching the practice telephoned Michael’s mother, who came and picked him up.
Michael testified that, as a result of the accident, he now suffers from headaches, attention deficit disorder, and memory problems. On April 3, 2000, Michael, by and through his father, brought this action, alleging that Coach Nall and Coach Faulk had been negligent and wanton in conducting the practice and in supervising the players. Michael’s parents also sought damages for expenses incurred in treating Michael, for emotional and mental anguish, and loss of what is described in the complaint as “filial consortium.”[1] On October 17, 2001, Coach Nall and Coach Faulk moved for a summary judgment on the basis of State-agent immunity. On December 20, 2001, the trial court heard oral argument on the motion; on June 27, 2002, it denied the motion. Coach Nall and Coach Faulk now petition for a writ of mandamus directing the trial court to grant their motion for a summary judgment.[2]

Standard, of Review

“While the general rule is that the denial of a motion for summary judgment is not reviewable, the exception is that the denial of a motion for summary judgment grounded on a claim of immunity is reviewable by petition for writ of mandamus.” Ex parte Rizk, 791 So.2d 911, 912 (Ala.2000). A writ of mandamus is an extraordinary remedy available only when there is: “(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.” Ex parte BOC Group, Inc., 823 So.2d 1270, 1272 (Ala.2001).

*544
Discussion

Coach Nall and Coach Faulk claim that they are entitled to State-agent immunity under Ex parte Cranman, 792 So.2d 392 (Ala.2000), because, they say, in formulating and conducting the baseball practice they were exercising judgment in educating students. In Cranman, a plurality of this Court purported to restate the rule governing State-agent immunity:

“A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent’s

“(1) formulating plans, policies, or designs; or
“(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
“(a) making administrative adjudications;
“(b) allocating resources;
“(c) negotiating contracts;
“(d) hiring, firing, transferring, assigning, or supervising personnel; or
“(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
“(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers’ arresting or attempting to arrest persons; or
“(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
“Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
“(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
“(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.”
Cranman, 792 So.2d at 405 (emphasis on “shall” and “shall not” in original, other emphasis added). See also Ex parte Butts, 775 So.2d 173 (Ala.2000).
Michael was eligible for academic credit for playing on the' junior-varsity baseball team. Generally, State agents are afforded immunity from civil liability when the conduct made the basis of the claim is based on the exercise of judgment in supervising and educating students. In Ex parte Blankenship, 806 So.2d 1186 (Ala.2000), a high-school band director, Blankenship, and a high-school principal, Fryer, petitioned this Court for a writ of mandamus directing the trial court to enter a summary judgment based on the doctrine of State-agent immunity for their actions in supervising a junior-high-school student who was participating in the high school’s band. The parents of the junior-high-school student sued Blankenship and Fryer, alleging that they should have prevented the junior-high-school student from leaving campus with her boyfriend, who was later accused of statutory rape. 806 So.2d at 1186. The boyfriend was also a member of the high-school band, and although he also did not attend the high school, he was allowed to participate in *545 band activities because Blankenship mistakenly believed that he was a student at a private school that did not have a band. 806 So.2d at 1187. In actuality, the boyfriend had previously dropped out of high school and was no longer a student. Id.
This Court held that Blankenship and Fryer were entitled to State-agent immunity under Cranman because in allowing the girl’s boyfriend to participate in the band they were exercising discretion in “discharging their duties in educating students.” 806 So.2d at 1189. The Court stated:
“One with 20/20 hindsight might question the wisdom of Blankenship and Fryer’s decision to allow a person they thought was a student from a private school outside Elmore County to participate in the band activities and the wisdom of their failing to verify that he was a student at the private school he claimed to attend. State-agent immunity protects agents of the State in their exercise of discretion in educating students. We will not second-guess their decisions.”
806 So.2d at 1190.
In determining whether Coach Nall and Coach Faulk’s decisions regarding the safety of the practice drill are protected by State-agent immunity, we are guided by our recent decision in Ex parte Spivey, 846 So.2d 322 (Ala.2002). In Spivey, a vocational teacher, Peacock, removed a guide fence from a saw, or “shaper,” used by students to cut wood. This shaper also lacked certain safety guards. A student was injured while using the shaper, and he sued Peacock, claiming that Peacock was liable for his injuries. This Court noted that, generally, educators are afforded immunity in certain situations:
“ ‘State-agent immunity protects agents of the State in their exercise of discretion in educating students.’ Ex parte Blankenship, 806 So.2d 1186, 1190 (Ala.2000). See also [Ex parte ] Cranman, 792 So.2d [392] at 405 [ (Ala.2000) ]. ... The Wrights’ action[ ] against Peacock ... arise[s] from decisions [he] made in educating students ..., [a category] specifically included within the Cranman restatement of the rule governing State-agent immunity. 792 So.2d at 405.”
Spivey, 846 So.2d at 331-32.
The student, however, claimed that Peacock was not entitled to State-agent immunity because, he said, Peacock failed to follow general provisions in his job description and in the faculty handbook regarding safety. 846 So.2d at 332-33. We rejected this argument. Although those documents “impose[d] upon Peacock a general responsibility to ensure safety in his classroom, the[y] ... do not remove from Peacock his judgment in determining the safe operation of the tools or when a safety hazard exists.” Spivey, 846 So.2d at 333. This exercise of judgment in “determining the safe operation of the tools or when a safety hazard exists,” we held, entitled Peacock to State-agent immunity under Cranman. Spivey, 846 So.2d at 333.
In this case it is undisputed that Coach Nall and Coach Faulk, in conducting the baseball practice session, were discharging their duties in educating students. Additionally, the Escambia County Board of Education has formulated no rules or policies specifying how baseball practices are to be held; instead, Coach Nall and Coach Faulk were left to exercise broad judgment in planning the safe conduct of the session and in deciding whether any safety hazards existed. Therefore, unless one of the exceptions to State-agent immunity under Cranman exists, Coach Nall and Coach Faulk are entitled to State-agent immunity because they were exercising their judgment in discharging their duties in educating students, and we will not second-guess their decisions. Spivey, 846 *546 So.2d at 331; Blankenship, 806 So.2d at 1190.
The Cannons admit that, under the authority of Spivey, Coach Nall’s decisions in conducting the practice are protected by State-agent immunity.[3] They claim, however, that Coach Faulk’s actions in hitting the baseball are not protected. Specifically, the Cannons claim that during the practice several of the players teased Coach Faulk because he was not hitting the balls very hard. The Cannons claim that, in response to the teasing, Coach Faulk began hitting the balls harder. In doing so, the Cannons allege, Coach Faulk was acting “tortiously” and with knowledge that his hitting the ball hard could harm one of the players. Thus, they argue, Cranman does not apply. We disagree.
There is no exception under Cran-man for “tortious” conduct unless the State agent “acts willfully, maliciously, fraudulently, in bad faith, beyond his ... authority, or under a mistaken interpretation of the law.” Cranman, 792 So.2d at 405. Once a State agent demonstrates that a plaintiffs claims are based on conduct that occurred while the State agent was exercising his judgment, “ ‘the burden then shifts to the plaintiff to establish that the [State agent] acted in bad faith or with malice or willfulness in order to deny the [State agent] immunity from suit.’ ” Spivey, 846 So.2d at 333 (quoting Ex parte Davis, 721 So.2d 685, 689 (Ala.1998)). Because both Coach Nall and Coach Faulk demonstrated that their decisions regarding the safe conduct of the practice were an exercise of judgment in discharging their duty in educating students, the burden shifts to the Cannons to demonstrate that Coach Faulk acted with malice or willfulness in hitting the balls during the baseball practice.
“ ‘Willfulness’ is the conscious doing of some act or omission of some duty under knowledge of existing conditions accompanied with a design or purpose to inflict injury.” Instruction 29.01, Alabama Pattern Jury Instructions-Civil (2d ed.1993); see also Roe v. Lewis, 416 So.2d 750, 754 (Ala.1982) (willfulness “denotes an intention to cause an injury”). Similarly, malice is defined as “[t]he intent, without justification or excuse, to commit a wrongful act. ...” Black’s Law Dictionary, 968 (7th ed.1999). The Cannons have presented no evidence indicating that Coach Faulk acted with an intent, purpose, or design to inflict injury. While there is evidence that, if true, would indicate that at some point during the practice Coach Faulk was hitting the balls “hard,” there is no evidence indicating that doing so was outside the intended scope or nature of the practice drill. Therefore, Coach Faulk’s actions do not fall under this exception to State-agent immunity.
We hold that both Coach Nall and Coach Faulk were entitled to State-agent immunity. Therefore, the petition is granted and the trial court is directed to enter a summary judgment in their favor.
PETITION GRANTED; WRIT ISSUED.
HOUSTON, SEE, LYONS, JOHNSTONE, HARWOOD, and WOODALL, JJ., concur.
MOORE, C.J., dissents.
STUART, J., recuses herself.

. The original complaint named the Escambia County Board of Education as a defendant. However, in an amended complaint filed on July 3, 2000, the Cannons dropped the Es-cambia County Board of Education from the action but added Bryant Smith as a defendant. Bryant Smith is not a party to this petition.

. Our review is limited to whether Coach Nall and Coach Faulk are entitled to State-agent immunity; thus, we do not at this time address the issues raised in the briefs to this Court regarding whether the doctrines of contributory negligence or assumption of risk bar this action.

. Our opinion in Spivey was released after Coach Nall and Coach Faulk filed this petition for the writ of mandamus. The Cannons’ brief, filed after the release of Spivey, candidly states: "After Spivey, it is reasonable that teachers should not be held liable for debatable failures to anticipate and correct all dangerous conditions in the school environment.” Cannons' brief at 17.