392 So.2d 815 (1980)
Correll GOLDEN
v.
Joe Douglas McCURRY, Jr.
79-78.
Supreme Court of Alabama.
October 3, 1980.
Rehearing Denied January 9, 1981.
*816 Francis H. Hare, Sr., Birmingham, and Charles E. Floyd, Phenix City, for appellant.
Ronald G. Davenport of Ferrell & Davenport, Phenix City, for appellee.
Lanny S. Vines, Birmingham, for Alabama Trial Lawyers Association.
Harold F. Herring, Huntsville, and Brittin T. Coleman, Birmingham, for Alabama Defense Lawyers Association.
PER CURIAM.
The significant issue presented by this appeal is whether this Court should abolish the common law rule of contributory negligence and replace it with the rule of comparative negligence.
The basic facts giving rise to the lawsuit are as follows: Plaintiff Correll Golden had ridden home from work in a truck. He alighted from the truck and was crossing Highway 164 to reach his home which was located across the highway. Golden was struck by defendant McCurry's automobile while he was still on the travelled portion of the highway. Golden claimed in his lawsuit that his injuries were proximately caused by McCurry's negligence or wantonness. McCurry claimed that Golden's own negligence contributed to his injuries. Golden asked the court to strike McCurry's contributory negligence defense and adopt the doctrine of comparative negligence. The trial court refused; Golden then stipulated that he was 1% negligent; McCurry stipulated that he would contend throughout the trial that Golden was contributorily negligent and that Golden's negligence proximately contributed to his injuries. Both parties conducted pre-trial discovery.
Claiming that he was entitled to a judgment as a matter of law based upon the pleadings and discovery of record, defendant McCurry filed a motion for summary judgment, which the trial court granted. Golden appeals.

I
As we stated before, the significant issue on this appeal is whether this Court should exercise its inherent power to abrogate the common law defense of contributory negligence and adopt in its place the doctrine of comparative negligence, or whether such a clear departure from presently existing law should be deferred to the judgment of the legislature.
The parties and the Alabama Trial Lawyers Association and the Alabama Defense Lawyers Association, amici curiae, have ably addressed the issues in this case in their briefs and at oral argument. Golden and ATLA contend that: (1) contributory negligence was judicially established; therefore, it can be judicially abolished; (2) the trend of the law is toward an apportionment of fault, and (3) the "pure" form of comparative negligence[1] should be adopted by this Court, and applied retroactively.
McCurry and ADLA, on the other hand, argue that: (1) Code 1975, § 1-3-1[2] is a statutory codification of the common law defense of contributory negligence; therefore, the legislature, and not the courts, should change the existing law; (2) more *817 states adhere to contributory negligence than to any one form of comparative negligence; and (3) to permit contributory negligence as a defense to a negligence claim is the most equitable because it denies recovery to the party who contributed to his own injuries.
We have carefully studied the many comments and debates by legal scholars, judges and lawyers on the doctrine of comparative negligence and its relation to the doctrine of contributory negligence. We recognize that the doctrine of contributory negligence has been severely criticized by eminent legal scholars and by judges who have abolished it by judicial decision, but we also recognize that "[t]he great majority of the jurisdictions which have recognized the applicability of the comparative negligence doctrine in negligence actions generally, have done so under statutory provisions expressly imposing the doctrine." Annot., 78 A.L.R.3d 339 (1977).
The Supreme Court of Illinois, when it declined to abrogate judicially that state's contributory negligence defense, said:
After full consideration we think, however, that such a far-reaching change, if desirable, should be made by the legislature rather than by the court. The General Assembly is the department of government to which the constitution has entrusted the power of changing the laws.
Where it is clear that the court has made a mistake it will not decline to correct it, even though the rule may have been re-asserted and acquiesced in for a long number of years. No person has a vested right in any rule of law entitling him to insist that it shall remain unchanged for his benefit. But when a rule of law has once been settled, contravening no statute or constitutional principle, such rule ought to be followed unless it can be shown that serious detriment is thereby likely to arise prejudicial to public interests....
Maki v. Frelk, 40 Ill.2d 193, 239 N.E.2d 445 (1968).
After due and deliberate consideration, we hold that, even though this Court has the inherent power to change the common law rule of contributory negligence, it should, as a matter of policy, leave any change of the doctrine of contributory negligence to the legislature. By refusing to exercise our inherent power, we follow the procedure common to most jurisdictions. We note that the change from contributory to comparative negligence in most, but not all, jurisdictions has come through the legislative process. Annot. 78 A.L.R.3d 339 (1977).

II
Plaintiff Golden claims that summary judgment was inappropriate as to the wanton count in his complaint, because, he says, contributory negligence is no defense to a wanton count.
Golden is correct in his claim that contributory negligence is inapplicable to a claim of wantonness on the part of the defendant, but he is not correct in his claim that summary judgment was improvidently granted in this case. Golden stipulated that he waived any hearing on the motion for summary judgment, and he offered no evidence in opposition to the motion for summary judgment other than the matters which were in the record at that time.
We have reviewed McCurry's motion for summary judgment and the materials offered in support thereof, and we are not convinced that the trial court incorrectly found no genuine issue of material fact and that McCurry was entitled to a judgment as a matter of law. We need not address that claim in this case because the parties did not seriously address that issue at trial or appellate level. In this proceeding, it is quite obvious that the plaintiff, in order to raise the theory of comparative negligence, stipulated that he was contributorily negligent. The briefs of the parties, with the exception of a page or two, are devoted entirely to that issue. If plaintiff wanted to preserve his right to a trial by jury on the wanton count, he should have made that point clear at the trial level, and argued *818 the point here on appeal. The record, the briefs and the oral arguments presented lead to the inescapable conclusion that the only meritorious issue on this appeal is whether this Court should abolish the doctrine of contributory negligence. Rule 1 of the Alabama Rules of Appellate Procedure states that this Court's rules of review are to be construed to assure the just determination of every proceeding.
We have duly and deliberately considered all of the arguments and briefs of the parties, including those of amici curiae. We are clear to the conclusion that the significant and dispositive issue on this appeal was whether summary judgment was appropriately granted on the plaintiff's negligence claim, when the plaintiff admitted that he was contributorily negligent and that his negligence proximately contributed to his own injuries. We have decided that issue.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C. J., and MADDOX, ALMON, and SHORES, JJ., concur.
BEATTY, J., concurs specially.
EMBRY, J., concurs in the result.
FAULKNER and JONES, JJ., dissent.
BEATTY, Justice (concurring specially):
I agree with the views expressed in the per curiam opinion and wish to add some observations upon another dimension to this problem.
The substitution of the defense of comparative negligence for contributory negligence has much to offer. As Dean Prosser relates, contributory negligence is not really negligence at all, but "contributory fault." Prosser, Law of Torts at 418. Because "fault" may be relative, or comparative, comparative negligence, or "contributory fault," would weigh the degrees of legal responsibility and condition recovery accordingly.
Until the decision in Grantham v. Denke, Ala., 359 So.2d 785 (1978), and those cases following the rationale of that decision, e. g., Fireman's Fund v. Coleman, Ala., 394 So.2d 334 (1980), I believed that this Court had the inherent power to change common law precepts in instances in which change was clearly necessitous, and the exercise of this Court's power was appropriate. That view would accord with the positions of some of those states which have made this change, while others have relied upon legislative action to effect that change. The Grantham line of cases, it seems to me, has circumscribed this Court's power to make that change. In essence, Grantham decided that under Section 13 of the Alabama Constitution the legislature itself could not deprive a person of common law rights and remedies, absent some quid pro quo or a perceived social evil. It should be conceded that a common law defense, such as contributory negligence (see Butterfield v. Forrester, 11 East 60, 103 Eng.Rep. 926 (1809); Smith v. Smith, 2 Pick., Mass., 621 (1824)) is entitled to the same respect as a common law right of action. Thus the reasoning underlying Grantham limits even the legislature's power to alter the defense of contributory negligence.
Now if the legislature is limited in making such a change, is not this Court likewise limited? It is just as evident under the limitation of Section 13 that this Court is not in any better position than the legislature to change the well established common law rule of contributory negligence. So if such a change is proposed, which body is more suitable under the scheme of separation of powers to effect it?
In Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810 (1944), dealing with an attack upon a statute, this Court stated:
[T]he courts do not hold statutes invalid because they think there are elements therein which are violative of natural justice or in conflict with the court's notions of natural, social, or political rights of the citizen, not guaranteed by the constitution itself. Nor even if the courts think the act is harsh or in some degree unfair, *819 and presents chances for abuse, or is of doubtful propriety. All of these questions of propriety, wisdom, necessity, utility, and expediency are held exclusively for the legislative bodies, and are matters with which the courts have no concern....
Should not this same reasoning be applied when courts are faced with suggested changes in well established common law doctrines? Does not such a change involve "questions of propriety, wisdom, necessity, utility, and expediency," the answers to which are better resolved by the broad legislative process which can weigh the competing policies and determine the most beneficial doctrinal form? The Grantham decision appears to answer this question affirmatively. Because Grantham dealt with an exercise of legislative power and held that exercise improper only because of a narrow constitutional limitation, that case implicitly recognized that the modification of well established common law principles nevertheless falls within the legislative realm. Whether that "legislative realm" is the appropriate forum for modifications of such principles appears to have been answered by McAdory. Contrary to my personal sentiments, therefore, we now must defer to those authorities.
FAULKNER, Justice (dissenting in part and concurring in part).
The majority's holding that, "even though this Court has the inherent power to change the common law rule of contributory negligence, it should, as a matter of policy, leave any change ... to the legislature" is like shaking the clammy, lifeless, hand of another man. It has no meaning. If the Court has the power to change the rule, a better reason than passing the "buck" to the legislature should be given.
The contributory negligence defense in force in this state is nothing more than an adoption of the common law; because the judiciary established the defense, the judiciary has the authority to abolish it. Such an abrogation of case law should not be deferred to the legislature, but should remain in the forum that created it; namely, the courts. See e. g., Hoffman v. Jones, 280 So.2d 431 (Fla.1973); Maki v. Frelk, 40 Ill.2d 193; 239 N.E.2d 445 (1968) (Ward, J., dissenting); Peterson v. Culp, 465 P.2d 876 (Or. 1970) (Denecke, J., dissenting).
The question of whether contributory or comparative negligence should be adopted in this state is riddled with economic considerations. Judge Learned Hand formulated an algebraic equation to determine negligence: The defendant is liable if the loss (injury) caused by the accident multiplied by the probability of its occurrence is greater than the cost of avoiding the accident. United States v. Carroll Towing Co., 159 F.2d 169 (2d Cir. 1947). The economically efficient solution, therefore, is to require the smaller cost to be incurred if it will prevent the larger accident cost. R. Posner, Economic Analysis of Law (2d ed. 1977), at 122-25.
In application to contributory negligence, if the plaintiff can prevent a $1000 accident at a cost of $50 and the defendant's avoidance cost is $100, the economically efficient solution is to refuse the plaintiff any recovery for failure to avoid the total loss at the lesser cost. If the defendant is liable in all instances without regard to the precautionary measures the plaintiff could have taken, there is no economic incentive for the plaintiff to avert the accident. Posner, supra.
On the other hand, if the defendant is able to avoid the $1000 loss at a cost of $50 and the plaintiff's cost is $100, the defense of contributory negligence (assuming it is applicable) still mandates that the plaintiff cannot recover at all. In essence, therefore, this defense sanctions the least economically efficient solution because it provides no incentive for the defendant to spend the lesser avoidance cost cognizant that, if the plaintiff contributed even a little bit, the defendant will incur no liability (expense) at all.
The doctrine of comparative negligence where the plaintiff's damages are diminished by the percentage of his own negligence that contributed to the accidentis not the panacea either. This doctrine tacitly advocates that more than the economically efficient *820 amount of precautionary measures be taken. Using the same figures immediately above, if the defendant would be two-thirds liable and the plaintiff one-third liable, incurring $666.67 and $333.33 of the $1000 loss respectively, then both parties would opt for the lesser avoidance cost at an aggregate prevention cost of $150. This results in economic inefficiency because either amount alone would have been sufficient to avoid the total loss.
Conversely, neither party may decide to opt for the lesser avoidance cost in reliance upon the fact that the other party has an economic incentive to take precautionary measures. This results in compensating a total loss of $1000 that could have been avoided at the lesser amount of $50 or $100, individually, or at a collective amount of $150. Even though the combined expense of $150 is over precautionary, economically speaking, it is at least more economically efficient than incurring the total or partial accident expense. Posner, supra.
This economic analysis becomes more intricate as we approach an examination of the respective forms of comparative negligence. I feel that we do this area of the lawand the publica great disservice by failing to recognize, work through and resolve the economic issues endemic to this dilemma.
I concur in part II of the majority opinion.
JONES, Justice (dissenting):
I respectfully dissent.
Prior to addressing the merits of the issue presented, consideration of the question of this Court's power and authority to replace contributory negligence with comparative negligence is appropriate. Appellee contends that the authority to so change the common law lies solely within the province of the legislature and not in the courts.
It is true that this Court has often deferred to the legislature's prerogative to change laws, even court-made laws. Indeed, we have acted to alter laws only in circumstances consistent with the doctrine of separation of powers. Beasley v. Bozeman, 299 Ala. 288, 315 So.2d 570 (1975). In the instant case, however, no such countervailing consideration applies. We are dealing here with judge-made common law which is, by its very nature, an ever-evolving creature. It should and must change to comport with contemporary standards and needs.
Contrary to Appellee's contention, § 1-3-1, Code of Ala.1975, is no bar to such change by the Court. This section states:
"The common law of England, so far as it is not inconsistent with the Constitution, laws and institutions of this state, shall, together with such institutions and laws, be the rule of decisions, and shall continue in force, except as from time to time it may be altered or repealed by the legislature."
To give it the literal interpretation Appellee seeks would be to make the law a static thing, unresponsive to changing societal needs, and contrary to the very essence of the common law process. Indeed, this Court has seen fit to change such common law concepts as manufacturer's liability (Casrell v. Altec Industries, Inc., 335 So.2d 128 (Ala.1976); Atkins v. American Motors Corp., 335 So.2d 134 (Ala.1976)); a wife's right to recover for loss of consortium (Swartz v. U. S. Steel Corp., 293 Ala. 439, 304 So.2d 881 (1974)); the rule of caveat emptor (Cochran v. Keeton, 287 Ala. 439, 252 So.2d 313 (1971)); and the duty of the user of subterranean waters (Henderson v. Wade Sand & Gravel Company, Inc., 388 So.2d 900 (Ala.1980).
Clearly, this Court has the power to do so, and I think it should strike contributory negligence as a viable defense to negligence actions in Alabama and institute in its place a system of comparative negligence.
This Court has long fostered a fault-based tort recovery doctrine. The basic premise of such a system is the logical link between fault and liability. Any facet of this approach which, in the light of contemporary standards of fairness, brings about overt unfairness and injustice should be reformed or struck down and replaced as the *821 circumstances dictate. Contributory negligence as a total bar to recovery defies the basic tenets of a fault system by allowing its presence in any degree to prevent recovery for a fault-produced injury. I agree with the Florida Supreme Court's statement in its opinion adopting comparative negligence:
"If fault is to remain the test of liability, then the doctrine of comparative negligence which involves apportionment of the loss among those whose fault contributed to the occurrence is more consistent with liability based on a fault premise."
Hoffman v. Jones, 280 So.2d 431, 436 (Fla. 1973).
I will not attempt to present a full history of the theories involved herein. They have been amply discussed by scholars for many years. See, e. g., V. Schwartz, Comparative Negligence (1974); R. Keeton, Creative Continuity in the Law of Torts, 75 Harv.L.Rev. 463 (1962); W. Prosser, Comparative Negligence, 51 Mich.L.Rev. 465, 469 (1953); W. Malone, The Formative Era of Contributory Negligence, 41 N.W.U.L. Rev. 151 (1946). Suffice it to say that to date at least thirty-four States have seen fit to adopt some form of comparative negligence as the more equitable approach, and I believe that it is meet and right that Alabama now join their ranks. It "is simply a more equitable system of determining liability and a more socially desirable method of loss distribution." Hoffman v. Jones, 280 So.2d 431, 437 (Fla.1973).
The theory of comparative negligence recognizes and makes provision for the situation where plaintiff's negligence contributes to his injuries. If defendant is found liable for negligently causing plaintiff's injuries and plaintiff has contributed to them in some degree, then his recovery is diminished by the percentage of fault found attributable to him by the finder of fact. In application, this system is consummately fair. It compensates the injured party only to the extent that his harm was negligently caused by another, and it does not penalize the defendant wrongdoer for harm which he did not proximately cause.
By moving to this standard, we would relieve our juries of a tremendous conflict inherent under the contributory negligence doctrine. Jurors tend to find themselves caught between the judge's instruction on contributory negligence and their own common concepts of the logical link between fault and liability. Finding the concept of contributory negligence offensive to their conscience and reason, jurors, in a case where contributory negligence is insufficient to persuade them against a plaintiff's verdict, appear to have two choices: 1) To find for plaintiff in the amount sought even if they feel it is excessive; or 2) to compromise the verdict, taking into account plaintiff's negligence and diminishing the recovery accordingly. The Florida Court in Hoffman summarizes the jurors' dilemma:
"Those who defend the doctrine of contributory negligence argue that the rule is also not as harsh in its practical effect as it is in theory. This is so, they say, because juries tend to disregard the instructions given by the trial judge in an effort to afford some measure of rough justice to the injured party. We agree with Dean Maloney that,
"`[T]here is something basically wrong with a rule of law that is so contrary to the settled convictions of the law community that laymen will almost always refuse to enforce it, even when solemnly told to do so by a judge whose instructions they have sworn to follow....
"`[T]he disrespect for law engendered by putting our citizens in a position in which they feel it is necessary to deliberately violate the law is not something to be lightly brushed aside; and it comes ill from the mouths of lawyers, who as officers of the courts have sworn to uphold the law, to defend the present system by arguing that it works because jurors can be trusted to disregard that very law.' 11 U.Fla.L.Rev. 135, pp. 151-152 (1958)." Hoffman v. Jones, supra, at 437.
See, also, James, Kalven, Keeton, Leflar, Malone and Wade, Comments on Maki v. FrelkComparative v. Contributory Negligence: Should the Court or Legislature Decide? *822 21 Vand.L.Rev. 889 (1968); 32 A.L. R.3d 463 (1970); and Kennedy v. Providence Hockey Club, Inc., 376 A.2d 329 (R.I. 1977).
That Alabama will one day join ranks with the majority of her sister states in adopting the rule of comparative negligence is a virtual certainty. To be sure, neither time nor space is any longer devoted to a debate of its merits. The honesty and forthrightness of its application belong, as an integral part of the whole, to the fault based concept of tort law. Only two conclusions remain: When? And from what source?
That the judiciary is a proper source, with the authority to alter the status quo and effect the change, goes unchallenged by the majority opinion. Whether the majority's reluctance to change lies primarily in the Court's traditional deference to the legislative process in matters of long-established substantive rules is pure speculation; but it is beyond conjecture to suggest it is less a blind adherence to precedent than a fateful coincidence of bad timing. Stripped of the mood which decries "too much, too fast," and given the continued inaction of the legislature, this Court, in a finer hour and farther down the line of time, will undo what it has here done and step forth proudly in the noblest tradition of the common law.
NOTES
[1] "The `pure' form of comparative negligence provides that the damages allowed to be recovered by the plaintiff shall be diminished in proportion to the amount of the negligence attributable to the plaintiff, whether or not such negligence by the plaintiff is greater than that of the defendant. Thus, in the extreme situation under the `pure' form, a plaintiff guilty of 99 per cent of the total negligence causing his injury could recover one percent of the damages." Annot., 32 A.L.R.3d 463 (1970).
[2] "The common law of England, so far as it is not inconsistent with the Constitution, laws and institutions of this state, shall, together with such institutions and laws, be the rule of decisions, and shall continue in force, except as from time to time it may be altered or repealed by the legislature."