621 So.2d 281 (1993)
William Frank HAMME and Sheila Diane Hamme
v.
CSX TRANSPORTATION, INC.; and W.L. Wood.
1911924.
Supreme Court of Alabama.
May 14, 1993.
*282 Stewart E. Burns of Burns, Burns & Burns, Gadsden, for appellants.
Curtis Wright of Dortch, Wright & Russell, Gadsden, for appellees.
HOUSTON, Justice.
William Frank Hamme and his wife Sheila appeal from a judgment based on a directed verdict for the defendants, CSX Transportation, Inc., and H.L. Wood, on the Hammes' wantonness claim arising out of a collision involving a CSX train and a truck driven by Frank Hamme.
The Hammes sued CSX and Wood,[1] individually and as agent, servant, or employee of CSX, alleging that CSX and Wood had negligently and wantonly caused a collision between the train and Frank Hamme's truck and that in that collision he had suffered injury. Frank Hamme sought "judgment against [CSX and Wood] in [the] sum of [$450,000], plus interest and costs ... and [claimed] punitive damages." Sheila Diane Hamme alleged loss of consortium as a result of the injuries her husband claimed to have suffered in the collision and sought a "judgment against [CSX and Wood] in the sum of [$150,000], plus interest and costs ... and [claimed] punitive damages." CSX and Wood answered, denying each allegation and claiming that Frank Hamme was contributorily negligent and was therefore barred from recovering for any negligence on the part of CSX and Wood.
At the close of the Hammes' case, CSX and Wood moved for directed verdicts on the claims of negligence and wantonness. The trial court denied a directed verdict on the negligence claim, but directed a verdict for CSX and Wood as to the wantonness claim. Subsequently, after having been instructed on the law of negligence and contributory negligence, the jury returned verdicts for CSX and Wood on Frank Hamme's negligence claim and on Sheila Hamme's claim. The court entered a judgment pursuant to the jury's verdicts and the directed verdict. Thereafter, the Hammes moved for a new trial on the wantonness claim, maintaining that "[t]he evidence and inferences therefrom which are most favorable to [the Hammes] provide substantial evidence of wantonness." The trial court denied the Hammes' motion for new trial. The Hammes appeal from that portion of the trial court's judgment based on the directed verdict for CSX and Wood on the wantonness claim. The Hammes do not appeal as to their negligence claim. We affirm in part, reverse in part, and remand.

COMPENSATORY DAMAGES
This action was filed after June 11, 1987; therefore, the applicable standard of review is the "substantial evidence" rule. See West v. Founders Life Assurance Co. of Florida, 547 So.2d 870 (Ala. 1989), for a definition of "substantial evidence"; Ala.Code 1975, § 12-21-12. In actions filed after June 11, 1987, a directed verdict for a defendant is proper if the plaintiff fails to present substantial evidence as to some element of his cause of action. See South Central Bell Telephone Co. v. Branum, 568 So.2d 795 (Ala.1990). In reviewing a directed verdict, this Court must view the evidence in the light most favorable to the nonmoving party.
In this case, to show that the trial court erred in directing a verdict for CSX and Wood on that portion of the wantonness count seeking compensatory damages, the Hammes, as the nonmovants, had to present "substantial evidence" in support of the claim of wantonness. See Berry v. Fife, 590 So.2d 884 (Ala.1991), in which the Court held that the applicable standard of review in actions in which a party alleges wanton conduct and seeks compensatory *283 damages, in all cases filed after June 11, 1987, is the "substantial evidence" rule. The Hammes had to present "substantial evidence" that CSX and Wood acted with "knowledge of the danger or a consciousness that injury was likely to result from an act or an omission to act," Burlington Northern R.R. Co. v. Whitt, 575 So.2d 1011, 1021 (Ala.1990), in order to submit to the jury the wantonness claim seeking compensatory damages.
To be wanton, it is not required that the actor know that a person is within the zone made dangerous by the actor's conduct; rather, it is sufficient that the actor knows that there is a strong possibility that another might rightfully come within the zone. See Restatement (Second) of Torts, § 500, comment d (1965); Joseph v. Staggs, 519 So.2d 952 (Ala.1988). The actor's knowledge may be proved by showing circumstances from which the fact of knowledge is a reasonable inference; it need not be proved by direct evidence. Wantonness does not require an intent to injure another, but may consist of an inadvertent act or failure to act, when the one acting or failing to act has knowledge that another is probably imperiled by the act or the failure to act and the act or failure to act is in reckless disregard of the consequences. Id.; Roe v. Lewis, 416 So.2d 750 (Ala.1982); Atlantic Coastline R.R. v. Brackin, 248 Ala. 459, 28 So.2d 193 (1946).
The undisputed facts of this case establish the following: The collision occurred around 6:00 a.m. on a rainy, semi-dark morning at the 9th Street railroad crossing in Gadsden, Alabama. Frank Hamme was travelling approximately 15 miles per hour, with his windshield wipers on, but he had no problem with visibility. He was familiar with the crossing, having passed it numerous times before, but on this day he did not stop the truck at the crossing. Rather, he slowed down to 2-3 miles per hour and looked in both directions; he saw no train. When his front tires were on the tracks and he looked to the right, he saw the train 20-30 feet away and he then "stomped on [the] gas to beat [the] train." The train was travelling at approximately 15 miles per hour. The train was approximately 900 feet from the crossing, when Wood, the engineer of the train, first saw Frank Hamme's truck, which was then approximately 500 feet from the railroad crossing. Wood thought Mr. Hamme was not going to stop at the crossing.
Other evidence is disputed. However, viewed in the light most favorable to the Hammes, as required under our applicable standard of review, it reveals the following: Although there was a company rule that the lights on the front of the engine were to be on at all times, Mr. Hamme saw no lights on the train. Although it was customary to blow the whistle for at least 10 seconds when the train reached a whistle board marker along the track, approximately 1000 feet from the crossing, Mr. Hamme heard no whistle. Although the railroad signals at the crossing, i.e., the flashing lights and ringing bells, were automatically activated and deactivated when the train passed over a specific circuit on the track, Mr. Hamme saw no lights flashing and heard no bells ringing at the railroad crossing.[2] Although Wood knew that Mr. Hamme was not going to stop at the railroad crossing, Wood did not apply the emergency brakes until after the train had hit the truck.
While we recognize a continuing duty on the part of a person intending to cross railroad tracks to stop, look, and listen for approaching trains, if there is substantial evidence that the railroad failed to use all reasonable means to warn the approaching driver of his danger, after the railroad discovered *284 the approaching driver's peril, or if there is substantial evidence that the railroad failed to stop the train after discovering the approaching driver's peril, if it could have done that in time to avoid the collision, then the question of wantonness is for the jury. Southern Ry. v. Diffley, 228 Ala. 490, 153 So. 746 (1934).
Based on the foregoing, and in accordance with our standard of review, we hold that the Hammes presented substantial evidence that, after discovering Frank Hamme's peril, Wood failed to use all reasonable means to warn Mr. Hamme of that peril and/or that Wood failed to stop the train, assuming that he could have done so in time to avoid the collision. Thus, the Hammes presented a fact question for the jury on the issue of wantonness.
Thus, to the extent that the Hammes seek compensatory damages on the wantonness claim, because "fair-minded persons in the exercise of impartial judgment [could] reasonably infer the fact sought to be proved," i.e., wantonness, West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989), the trial court erred in directing a verdict for CSX and Wood. Thus, we reverse the judgment as to the claim for compensatory damages on the basis of wantonness.

PUNITIVE DAMAGES
We note that in actions in which a party alleges wanton conduct as a cause of action and seeks punitive damages, in all cases in which the right accrued after June 11, 1987, the wanton conduct must be proved by "clear and convincing evidence." See, Ala.Code 1975, § 6-11-20(a); see, also, Berry v. Fife, supra; and International Rehabilitation Associates, Inc. v. Adams, 613 So.2d 1207 (Ala.1992). Ala.Code 1975, § 6-11-20(b)(4), defines "clear and convincing evidence" as follows:
"Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt."
In this case, although in their complaint the Hammes sought punitive damages and in their notice of appeal they did not withdraw that claim, the Hammes state as follows in their reply brief on appeal:
"[CSX and Wood] contend by implication that [the Hammes] had to prove by clear and convincing evidence that [CSX and Wood] engaged in wanton conduct in order to prevail on this appeal. However, [the `clear and convincing evidence'] burden of proof applies only to punitive damages where wantonness is claimed. In this case, the issue of wantonness is only applicable to withstanding a claim of contributory negligence. Therefore, the burden of proof is not clear and convincing evidence. The issue is whether [the Hammes] proffered substantial evidence in this case to support their claim that [CSX and Wood's] conduct showed some degree of consciousness that injury was likely to result from their action or omissions."
Therefore, whether the Hammes presented the "clear and convincing evidence" of wantonness necessary to create a fact question for the jury on the claim for punitive damages is not before us. Thus, as to the Hammes' claim for punitive damages on the basis of wantonness, we affirm the judgment based on the directed verdict.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and SHORES, ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.
MADDOX, J., concurs in part and dissents in part.
MADDOX, Justice (concurring in part and dissenting in part).
I concur with the majority opinion except for the holding "that the Hammes presented substantial evidence that, after discovering Frank Hamme's peril, Wood failed to use all reasonable means to warn Mr. *285 Hamme of that peril and/or that Wood failed to stop the train, assuming that he could have done so in time to avoid the collision." 621 So.2d at 284. On that point, I must respectfully dissent.
The engineer, Wood, testified that he did not see Frank Hamme's truck until it moved into sight from around a building, when it was between seven and nine automobile lengths from the crossing, and that he (Wood) did not realize until Hamme reached the crossing that Hamme was not going to stop, at which point Wood placed the train in "emergency." Based on this testimony, I do not find substantial evidence that the defendants "acted with `knowledge of the danger or a consciousness that injury was likely to result from an act or an omission to act,'" 621 So.2d at 283, quoting in part Burlington Northern R.R. v. Whitt, 575 So.2d 1011, 1021 (Ala. 1990), sufficient to submit the wantonness claim to the jury. In Whitt, there was evidence not only that the red warning lights were not operating, but also that the train was moving at an excessive speed and that the "peepholes" on the signal lights, which permit train crew members to observe whether the warning lights are flashing, were covered with paint.
Accordingly, I would affirm the trial court's judgment based on the directed verdict.
NOTES
[1] Wood was the engineer of the train that collided with Frank Hamme's truck.
[2] The parties spend a great deal of time arguing whether the lights at the crossing were flashing and whether the crossing bells were ringing. However, the lights and the bells at the crossing site were automatically activated and deactivated as the train passed over a specific circuit on the track. These devices were not within the control of train personnel, and there was no evidence that CSX knew of any problems with these devices. Therefore, whether the lights were flashing and whether the bells were ringing, that question has no bearing on our determination of the wantonness issue as to CSX, other than under the doctrine of respondeat superior.