Emma B. GIBSON, as Administratrix
of the Estate of Nathan Eugene
Gibson, Deceased, Plaintiff,

v.

NORFOLK SOUTHERN CORPORATION,
Central of Georgia Railroad Company,
and Harmon Electronics, Inc., Defendants.

Civ. A. No. 92–G–1894–S.

United States District Court,
N.D. Alabama,
Southern Division.

March 24, 1994.

William N. Clark, Gerald L. Miller, Maxwell H. Pulliam, Redden, Mills & Clark, Birmingham, AL, for plaintiff.

Charles E. Sharp, Turner B. Williams, Sadler, Sullivan, Herring & Sharp, P.C., Birmingham, AL, for D's Norfolk Southern & Central of Georgia.

John M. Johnson, Lee M. Hollis, Lightfoot, Franklin, White & Lucas, Birmingham, AL, and Craig S. O'Dear, Bryan & Cave, Kansas City, MO, for D. Harmon Electronics.

## MEMORANDUM OPINION

GUIN, Senior District Judge.

This cause is before the court on motion for summary judgment by defendants Norfolk Southern Corporation and Central of Georgia Railroad Company and on motion by defendant Harmon Electronics, Inc. for summary judgment. Norfolk Southern Corporation is a holding company of which Central of Georgia Railroad Company is a subsidiary. All submissions to the court have represented the interests of these companies as common to both, and one summary judgment motion was filed on behalf of both. Accordingly, the court shall treat these companies as one entity and shall hereinafter refer to that entity as the Railroad.

The court has considered the motions, the record, the submissions of counsel, and the applicable law. The court finds that there is no genuine issue of material fact and the defendants are entitled to judgment as a matter of law.

This cause arises out of a railroad crossing accident in which the plaintiff's decedent was killed. A train owned by defendant Central of Georgia Railroad Company and operated by defendants Central of Georgia Railroad Company and Norfolk Southern Corporation collided with the car being driven by Nathan Eugene Gibson as the car crossed the intersection of the Railroad's track and Shelby County Road 62. The crossing was equipped with yellow railroad crossing warning signs, painted crossbars on the pavement, crossbucks, and an electronic warning system with bells to warn pedestrians and flashing lights to warn oncoming drivers. Nathan Gibson was killed in this collision, and this suit was brought by his mother as administratrix of his estate.

The electronic warning device at this highway/rail intersection was manufactured by defendant Harmon Electronics, Inc. (Harmon). This device was a Harmon Phase Motion Detector (PMD–1) which activated bells and flashing lights when a train approached the crossing or when interference with the device's detection ability occurred. The PMD–1 utilizes a continuous circuit which runs between the rails. When this circuit is interrupted, the signals are activated. An approaching train interrupts the circuit, thus activating the warning lights and bell. The PMD–1 also has a fail-safe feature

which activates the warning lights and bell when something interferes with the PMD–1's detection ability. Such interference can result from anything which disturbs the continuity of the circuit such as a broken wire or an electrical short. This fail-safe feature causes the warning signals to sound and flash continuously until the interference is eliminated and the system is reset. Affidavit of Forrest Ballinger, manager of Harmon's Highway Crossing Systems. This warning device was maintained by the defendant Railroad.

■ Plaintiff's claim against Harmon is brought under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD). The AEMLD is a judicially developed products liability doctrine which is premised on the sale of an allegedly defective product by a manufacturer. *Dennis v. American Honda Motor Co.*, 585 So.2d 1336, 1339 (Ala.1991). The Alabama Supreme Court has made it clear that "the AEMLD is a fault-based cause of action [under which] the plaintiff must prove more than the fact that an injury occurred while using the product." *Brooks v. Colonial Chevrolet–Buick, Inc.*, 579 So.2d 1328, 1332 (Ala.1991). Under the AEMLD,

[l]iability is not established merely by showing that the product failed in furthering or performing its intended use. The Plaintiff must prove that the product was substantially unaltered [from its state when it left the manufacturer] when used by him and must also prove causation in fact, including proof that the defect caused the injury and that the defect is traceable to the Defendant.

*Sears, Roebuck & Co., Inc. v. Haven Hills Farm, Inc.*, 395 So.2d 991, 995 (Ala.1981). The Alabama Supreme Court has stated that "a 'defect' is that which renders a product 'unreasonably dangerous,' i.e., not fit for its intended purpose, and that all 'defective' products are covered [by this definition].... 'Defective' is interpreted to mean that the product does not meet the reasonable expec-

tations of an ordinary consumer as to its safety." *Casrell v. Altec Industries, Inc.*, 335 So.2d 128, 133 (Ala.1976). The Alabama Supreme Court has also stated that:

The burden of proof rests with the injured consumer to prove that the product left the defendant's control in an unreasonably dangerous condition not fit for its expected use, and that which rendered the product in such an unfit condition in fact caused the injury. The plaintiff's burden will not be sustained without evidence to support the conclusion that the product is defective.

*Sears, Roebuck & Co., Inc. v. Haven Hills Farm, Inc.*, 395 So.2d 991, 995 (Ala.1981).

In the case at bar, plaintiff claims that the PMD–1 was defective and unreasonably dangerous to motorists when it was being put to its intended use. The island transmitter from the PMD–1 in use at this crossing was lost by a railroad employee [1] after the accident and therefore was not available for examination or testing.

■ The court finds that the plaintiff has not established a prima facie case against Harmon. In the face of the loss of the island transmitter module which is an integral part of the PMD–1, the plaintiff cannot prove that the PMD–1 was in substantially the same condition at the time of the accident that it was in when it left Harmon's control.

■ Further, the plaintiff has made no cognizable showing of defect. Even accepting as true the plaintiff's evidence that the signal had been observed to operate on occasions when no train was approaching, no showing of defect has been made. The defendant has produced undisputed evidence that the PMD–1 has a fail-safe feature which activates the warning lights and bell when something interferes with the PMD–1's detection ability. This evidence was given by affidavit from Forrest Ballinger who is employed by Harmon as its manager of High-

1. After the train was moved clear of the crossing, the warning lights continued to flash for a long period of time. Railroad employees, James Spencer and Fred Bettis, inspected the PMD–1 and determined that the island transmitter module was no longer functioning. Bettis installed a new module. The one removed was taken to Norfolk's toolroom in Leeds, Alabama. No identifying tags or marks were put on the unit, and it ultimately was mixed in with other modules just like it, making identification impossible.

way Crossing Systems and who was involved in the design and development of the PMD–1. In her response to Harmon's first request for admissions, the plaintiff admitted that the warning lights were flashing as the decedent approached the railroad crossing, but she went on to argue that the alarms often operated in the absence of an oncoming train. Plaintiff's response to Harmon's first request for admissions, paragraph 1. The plaintiff alleges this action by the alarms in the absence of an oncoming train is proof of malfunction. However, no evidence has been adduced to show that this feature constituted a defect or that this feature was malfunctioning.

■ Even had the plaintiff established defect, she has failed to establish causation in fact. No competent evidence has been produced showing that the warning lights and signal were not working at the time of the accident. The expert proffered by the plaintiff on this point, Archie Burnham, offered nothing more than speculation and conjecture on this point, saying that "the lights may well have not flashed as Nathan approached within sight of them, or the lights may not have flashed at the times Nathan looked at them, as he approached." Affidavit of Archie C. Burnham, Jr., page 9. By previous order entered on December 1, 1993, the court has already granted a motion by Harmon to strike portions of Mr. Burnham's affidavit. By that order, the court "strictly limit[ed] Burnham's testimony to those matters within his expertise as a railroad crossing expert." Order entered December 1, 1993, document 46 in court record. The court granted Harmon's motion in its entirety thereby striking any testimony by Burnham as to the defectiveness of the PMD–1 and as to what the decedent may or may not have seen as he approached the crossing. Further, as stated above, the plaintiff admitted in response to a request for admissions that the crossing lights were flashing as the decedent approached the crossing. Plain-

tiff's response to Harmon's first request for admissions, paragraph 1.

■ In light of plaintiff's admission that the warning lights were working, the decedent was under a duty to stop, look, and listen before proceeding across the tracks. Code of Alabama § 32–5A–150(a)(1) and (3) states:

(a) Whenever any person driving a vehicle approaches a railroad grade crossing under any of the circumstances stated in this section, the driver of such vehicle shall stop within 50 feet but not less than 15 feet from the nearest rail of such railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:

(1) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a railroad train;

. . . . .

(3) A railroad train approaching within approximately 1,500 feet of the highway crossing emits a signal audible from such distance and such train, by reason of its speed or nearness to such crossing, is an immediate hazard; ...

The evidence shows that the skid marks made by the decedent's car began thirty-six feet from the railroad tracks. Deposition of Trooper T.J. Jackson, Jr., page 24. While the court deems the trooper's testimony regarding speed of the vehicle not to be admissible, the court can and does take note of the existence and location of the skid marks. The skid marks indicate that the decedent did not begin braking appreciably until the car was within thirty-six feet of the tracks. It is undisputed that he never stopped the car in compliance with his statutory duty. Further, no competent evidence has been proffered establishing obstructed view of the warning signal.[2] The undisputed physical evidence establishes that the decedent failed to comply with the stop, look, and listen provisions of the Alabama Code § 32–5A–

2. Plaintiff has offered the affidavit of Archie C. Burnham, Jr. as an expert on railroad crossings. Burnham's conclusion that "the lights may well have not flashed as Nathan approached within sight of them, or the lights may not have flashed at the times Nathan looked at them, as he approached," is unfounded speculation and total conjecture and does not constitute admissible evidence.

150(a)(1) and (3), and he was therefore contributorily negligent as a matter of law. The Supreme Court of Alabama has stated that:

> The general rule ... is that where a motorist fails to "Stop, Look & Listen" before crossing a railroad track, and he thereby runs into or collides with a train on its track at a public crossing, he is guilty of contributory negligence as a matter of law and his negligence will be treated as the sole proximate cause of his injuries.

*Lambeth v. Gulf, Mobile and Ohio Railroad Co.*, 273 Ala. 387, 141 So.2d 170, 172 (1962). An exception to this rule "arises when some peculiar environment or hazardous condition confronts the driver." *Stallworth v. Illinois Central Gulf Railroad*, 690 F.2d 858, 866 (11th Cir.1982). No competent evidence has been proffered to suggest extenuating circumstances which might have relieved the decedent of his duty to comply with the statute or created a question of fact for the jury's consideration regarding the driver's negligence.

The plaintiff argues that contributory negligence is not a defense to an action brought under the AEMLD and relies on *Dennis v. American Honda Motor Co.*, 585 So.2d 1336 (Ala.1991), as authority for this position.[3] The court finds this reliance to be misplaced and plaintiff's analysis on this point of law to be incorrect.

In *Dennis* the court held that contributory negligence in causing an accident could not be used as a defense by a manufacturer of a product intended to protect the user in the event of just such an accident. The case involved a motorcycle accident in which the driver of the motorcycle was contributorily negligent in causing the traffic accident in which he was injured. He was wearing a helmet manufactured by the defendant. The plaintiff alleged that the helmet did not protect against head injuries as it was intended

to do. The lower court gave the jury a charge which allowed it to consider as a defense the contributory negligence of the motorcyclist in causing the accident. The Alabama Supreme Court held that the contributory negligence of the plaintiff in causing the accident was not a valid defense as to the AEMLD claims regarding the performance of the helmet and that the instruction should not have been given. Had the helmet been misused in some fashion, for instance if the strap had not been buckled, then the contributory negligence defense would have been available. The court clearly stated in *Dennis* that "[t]he defense of contributory negligence in an AEMLD action should be limited to assumption of the risk and misuse of the product." *Dennis v. American Honda Motor Co.*, 585 So.2d 1336, 1339 (Ala.1991).

In the case at bar, the plaintiff misused the PMD–1 by failing to heed its warning to stop, look, and listen. Proper use of a warning signal requires precautionary action on the part of the driver. Just as a blinking red traffic signal requires a driver to stop and check for traffic before proceeding through an intersection, a flashing railroad crossing warning light requires the driver to stop, look, and listen to ascertain whether a train is approaching before proceeding across the tracks. Plaintiff's decedent failed to do so.

Unlike the product in *Dennis*, the product in the present case was not intended to prevent harm in the case of an accident. It was intended to prevent the accident in the first instance. The decedent's blatant disregard of the warning signals resulted in his tragic accident. This conduct was in violation of state statute, constitutes negligence as a matter of law, and acts as a defense to plaintiff's claims against Harmon.

 The court further finds that, given the evidence regarding the flashing of the

---

**3.** In *Campbell v. Cutler Hammer, Inc.*, 996 F.2d 1164 (11th Cir.1993), a question has been certified from the United States Court of Appeals for the Eleventh Circuit and accepted by the Alabama Supreme Court regarding the interpretation of *Dennis*. As of the date of this opinion, the certified question has not been answered. The question presented in *Campbell* does not bear on the case at bar. In *Campbell*, the jury found the product involved to be defective. The jury fur-

ther found that plaintiff was contributorily negligent in causing the accident. The jury awarded $600,000.00 to the plaintiff. The trial judge concluded that the jury's finding regarding plaintiff's contributory negligence barred his recovery, and the court declined to enter the $600,000.00 verdict. In the case at bar, the court has found that defect has not been proven and that no genuine issue of material fact was presented on that issue.

warning lights, the decedent assumed the risk of crossing the railroad tracks in the face of that warning. Assumption of risk acts as a complete defense to an AEMLD claim. *Dennis v. American Honda Motor Co.*, 585 So.2d 1336, 1342 (Ala.1991). In order to have assumed a risk, one must have knowledge and appreciation of the danger of the situation and voluntarily consent to bear the risk. *Kelton v. Gulf States Steel Inc.*, 575 So.2d 1054, 1055 (Ala.1991).

▮ The burden of proof is on the defendant to prove the elements of the affirmative defense of assumption of risk. However, the driver of a vehicle is chargeable with the knowledge of a prudent and vigilant operator. *Dennis v. American Honda Motor Co.*, 585 So.2d 1336, 1342 (Ala.1991). In the absence of evidence to the contrary, the driver is assumed to be a reasonably prudent person of normal sensibilities. No evidence has been adduced to indicate that the decedent did not have a normal and ordinary appreciation of danger in general or of that danger particularly inherent in crossing railroad tracks at which warning lights were flashing. Even if the court accepts as true the plaintiff's argument that the decedent knew that the warning signals often sounded and flashed in the absence of an approaching train and was therefore lulled into disbelieving the signal, the decedent still assumed the risk of collision by crossing those tracks without taking the necessary precautions of stopping and visually verifying that no train was in fact approaching.

Accordingly, the defendant Harmon Electronics, Inc. is entitled to judgment as a matter of law. The plaintiff has failed to establish a prima facie case under the AEMLD; the decedent was contributorily negligent as a matter of law; and the decedent assumed the risk of collision at the crossing.

The plaintiff has also filed suit against Norfolk Southern Corporation and Central of Georgia Railroad Company (the Railroad) for negligent or wanton design and maintenance of the crossing, including the right-of-way and the warning devices. The plaintiff also alleges that the Railroad negligently or wantonly operated the train causing the collision in which the decedent died. The Railroad has filed a motion for summary judgment as to the claims made against it.

▮ As discussed above, the court finds that the decedent was negligent as a matter of law by virtue of his violating the stop, look, and listen provision found in Alabama Code § 32–5A–150. This contributory negligence was the proximate cause of the accident which caused the decedent's death and serves as a defense to the plaintiff's claims of negligence against the Railroad. Decedent's assumption of risk as discussed above also precludes plaintiff's recovery on her negligence claims against the Railroad.

Although the court finds that the decedent's contributory negligence and assumption of risk preclude plaintiff's recovery on her negligence claims against the Railroad, the court also finds that alternative grounds for granting the Railroad's motion for summary judgment as to the negligence claims exist. These alternative grounds for granting summary judgment in favor of the Railroad on the negligence counts will be discussed in conjunction with the court's findings on the wantonness claims, because these claims for negligence and wantonness are premised on the same acts.

▮ Wantonness and negligence are qualitatively different. Wantonness is not just a more egregious form of negligence. The Alabama Supreme Court has stated that:

> Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury. The element of intent, or knowledge, is not present in simple negligence, and the element of intent does not raise a person's conduct to merely a greater degree of negligence as, for instance, gross negligence.

> . . . . .

> Negligence is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care; whereas wantonness is characterized as an act which cannot exist without a purpose or design.

*Lynn Strickland Sales & Service, Inc. v. Aero–Lane Fabricators, Inc.*, 510 So.2d 142, 145 (Ala.1987). Simple negligence is not an element of wantonness. *Id.* Further, contributory negligence is not a defense to a claim of wantonness. *Stallworth v. Illinois Central Gulf Railroad,* 690 F.2d 858, 863 (11th Cir.1982); *Golden v. McCurry,* 392 So.2d 815, 817 (Ala.1980).

■ In order to establish a claim for wantonness, the plaintiff must show that the Railroad participated in conduct which was characterized by "a reckless or conscious disregard of the rights or safety of others." Alabama Code § ·6–11–20(b)(3). However, no intent to injure is required. As explained by the Alabama Supreme Court,

> [w]antonness does not require an intent to injure another, but may consist of an inadvertent act or failure to act, when the one acting or failing to act has knowledge that another is probably imperiled by the act or failure to act and the act or failure to act is in reckless disregard of the consequences. [Citations omitted].

*Hamme v. CSX Transportation, Inc.,* 621 So.2d 281, 283 (Ala.1993). The plaintiff claims that the train was operated in a wanton manner and that the crossing was wantonly designed and maintained.

In her position statement in the pretrial order, the plaintiff alleges that the train was operated in a negligent or wanton manner. In her brief submitted in opposition to the motion for summary judgment now before the court, the plaintiff more specifically argues that the train was being operated at excessive speed and that the train's engineer failed to blow the whistle as the train approached the crossing and/or that the engineer failed to vary the blasts from the whistle as it approached the crossing so that the whistle blasts would have acted as a more forceful warning than simple whistle blasts.

■ As preface to its findings, the court notes that the undisputed evidence shows that the active warning devices at this crossing were paid for with federal funds. Affidavit of John B. Marbury, Jr. Accordingly, federal regulations as to the number and type of warning devices required at the crossing are preemptive. *CSX Transporta-*

*tion, Inc. v. Easterwood,* 507 U.S. ——, ——, 113 S.Ct. 1732, 1741, 123 L.Ed.2d 387, 401 (1993). Further, federal regulation is also preemptive regarding allowable speed of a train in a given area. 49 C.F.R. § 213.9(a).

■ The plaintiff's contention that the train was being operated at an excessive rate of speed is not borne out by the record. Appropriate speed for crossings is set by federal regulation according to various factors such as area population and the class of track used. 49 C.F.R. § 213.9(a). The undisputed evidence is that the train was travelling at a rate of forty-eight miles per hour which is within the range set by the applicable federal regulations governing train speed at this crossing. Deposition of J.W. Vaught, page 90 (as to the speed the train was travelling). Accordingly, the plaintiff cannot recover on her claims of negligence or wantonness based on excessive speed.

■ The plaintiff also alleges that the Railroad was negligent or wanton in failing to provide additional protection at this crossing. The Railroad was in compliance with the federal regulation which dictates the required warning devices at a crossing such as the one involved in this case. 23 C.F.R. § 646.214. Accordingly, plaintiff's claims of negligence and wantonness are defeated by the Railroad's compliance with the federal regulations on this point which preempt the field. *CSX Transportation, Inc. v. Easterwood,* 507 U.S. ——, ——, 113 S.Ct. 1732, 123 L.Ed.2d 387, 401 (1993).

■. The plaintiff further contends that the Railroad was negligent or wanton in its maintenance of the vegetation near the crossing. The plaintiff contends that the vegetation obstructed drivers' view of the warning signals and of the track in the immediate vicinity of the crossing. The photographic evidence submitted clearly shows that the crossing area was well tended with no overgrown vegetation. No allegation has been made that the crossing area was altered in any way following the accident and preceding the taking of the photographs submitted.

■ Federal regulations require that vegetation on railroad property which is on

**1464**

or immediately adjacent to the roadbed be maintained in such a way as to avoid: fire hazard, obstruction of visibility of railroad signs and signals, interference with trackside duties, prevention of proper functioning of signal and communication lines, and prevention of inspection of moving equipment by employees. The regulations do not specifically define nor does case law appear to exist which specifically defines how large an area is considered to be "immediately adjacent" to the tracks. No evidence has been submitted to prove that any obstruction of the signs and signals existed.[4] As to obstruction of the line of sight down the tracks, the photographic evidence submitted shows no obstruction of the line of sight caused by overgrown vegetation or other negligent or wanton maintenance.

■■■ The plaintiff argues that the Railroad was negligent or wanton in failing to use all reasonable means to warn the decedent of the approaching train and in failing to stop the train before the collision occurred. The evidence of record is to the contrary, and plaintiff has failed to present sufficient evidence to raise a question of fact as to these allegations. A train's engineer is under no duty to stop at a crossing whenever a car is seen approaching the crossing. Discovery or appreciation of the driver's being in peril must also be present. After the automobile driver's peril has been discovered, the railroad has a duty to use all reasonable means to warn the driver of the approaching train. A railroad has the further duty to stop the train after discovering the driver's peril if the train can be stopped in time to avoid the collision. Substantial evidence of the railroad's failure to meet these duties must be proffered in order for a question of fact regarding wantonness to be created for the jury's consideration. *Hamme v. CSX Transportation, Inc.,* 621 So.2d 281,

283–84 (Ala.1993). In the case at bar, the plaintiff has failed to so proffer.

■■■ The train involved in the accident was equipped with three devices which could be used to warn or alert oncoming pedestrians and vehicles of the train's approach—a bell, headlights, and a whistle or horn. The evidence shows that all three were used to warn the decedent of the approaching train. The headlights were on, the bell was sounded, and the whistle was blown. Deposition of J.W. Vaught, page 83 (as to headlights and bell), pages 72–73 and 83–84 (as to sounding of whistle). Deposition of Barnett Jenkins (head end brakeman on the train), page 69 (as to blowing of the whistle and the change in whistle blast pattern).

The evidence shows that the engineer began sounding the whistle at the whistle board,[5] a quarter of a mile before the crossing, and that the engineer changed the whistle signal to an almost continuous blast when it appeared that Gibson's car was not going to stop. Deposition of J.W. Vaught (train engineer), pages 72–73 and 83–84 (as to his blowing the whistle initially). Deposition of Barnett Jenkins (head end brakeman on the train), page 69 (as to blowing of the whistle and the change in whistle blast pattern). Plaintiff would have the court accept as competent contradictory testimony the statements made by Jene Masters and Mary Smiley in their depositions. Mr. Masters' testimony is equivocal at best. The question posed to Mr. Masters was, "When you were sitting there reading the paper [on the day of the accident], had you heard the train whistle or anything like that? Had you been aware that there was a [Question ends here. No deletion made by the court]." Mr. Masters' reply was, "No. Well, we've lived there so long, you don't pay it any attention really." Deposition of Jene Masters, page 8. Ms. Smiley testified that even if it blew on the morning of the accident she would not re-

---

**4.** Plaintiff's proffered expert, Archie Burnham, makes reference in his affidavit to the warning lights being improperly focused. The federal regulations which set the standards for railroad crossing warnings do not include any requirements regarding the focus of the lights. Since no standard on this point exists, the Railroad cannot be said to have breached it.

**5.** A whistle board is a sign marker which the railroad places beside the track to remind the train crew that it is approaching a crossing and needs to sound its whistle. In the case at bar, the whistle board was a quarter of a mile from the crossing.

member whether it had by the day of the deposition, some two years after the accident. Deposition of Mary Smiley, page 18. These statements are not equivalent to affirmative statements that the whistle was not blown. The court finds that the plaintiff has failed to produce substantial evidence of a breach of duty on the part of the Railroad in regard to attempting to adequately warn the decedent by use of the whistle. Without such a showing of breached duty, negligence cannot be established. The court further finds that the plaintiff has completely failed to make any showing that would establish the requisite elements of wantonness. The plaintiff has failed to establish in any way that the engineer "had knowledge of decedent's peril and of the probable consequences and with reckless disregard of such consequences he pursued that conduct which proximately caused the death of plaintiff's decedent." *Griffin Lumber Co. v. Harper,* 247 Ala. 616, 25 So.2d 505, 508 (1946).

■ The plaintiff further contends that the Railroad was negligent or wanton in its maintenance of the crossing's warning devices. The plaintiff has failed to present any evidence of breach of the duty of reasonable maintenance on the part of the Railroad. Further, as stated earlier in this opinion, the decedent's contributory negligence and assumption of risk stand as defenses to the plaintiff's negligence claims premised on negligent maintenance. Thus, her negligence claim on this theory fails. As to the claims of wanton maintenance, the plaintiff has failed to produce any evidence of knowledge on the part of the Railroad as to any malfunction in the warning devices at the crossing. No reports of such malfunctions prior to the accident were proffered. The bare conclusory statement by the plaintiff that she believed that the signals malfunctioned is not sufficient to establish knowledge on the part of the Railroad. Without this knowledge, wantonness on the part of the Railroad regarding maintenance of the crossing devices cannot be established.

■ Plaintiff argues that the Railroad was negligent or wanton in its failure to stop the train once the decedent's peril was discovered by the engineer. According to the plaintiff's own assertion, this discovery was made when the train was approximately 164 feet from the crossing. The most rudimentary knowledge of physics leads to the inevitable conclusion that a 22,050 foot long, 1,678 ton train could not even slow appreciably in that short distance. The record shows that it took approximately 1,700 to 2,000 feet for the train to come to a full stop after the brakes were applied. The plaintiff has produced no evidence to the contrary. The undisputed evidence shows that the engineer applied his brakes in line with emergency procedure to effect as quick a stop as physically possible as soon as he realized the decedent was not going to stop at the crossing nor was he going to make it safely across the tracks. Deposition of J.W. Vaught, pages 73-74. No showing of negligence or wantonness as to stopping the train has been made by the plaintiff.

The court is saddened by the tragedy before it, but the record and the law require that summary judgment be granted on behalf of the defendants. The court finds that no genuine issues of material fact exist and that the defendants in this case are entitled to judgment as a matter of law. An order in conformity with this opinion shall be entered contemporaneously herewith.

DONE and ORDERED.